REID L. MOORE, Petitioner, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—89—0913

Opinion filed December 6, 1990.

Herman G. Bodewes, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Richard J. Tupper, of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County and Municipal Employees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner, Reid L. Moore, brought three unfair labor practice allegations contending the American Federation of State, County and Municipal Employees (AFSCME), his exclusive bargaining representative, breached its duty of fair representation toward him. The allegations were based upon AFSCME's handling of another employee's grievance, which resulted in Moore's loss of a promotion, and AFSCME's treatment of Moore's subsequent grievances.

The Illinois State Labor Relations Board (ISLRB) found one of the allegations untimely and found AFSCME had not committed an unfair labor practice by failing to pursue Moore's grievances to arbitration. However, the ISLRB found AFSCME had committed an unfair labor practice by deceiving Moore about the status of his grievances. *AFSCME (Moore)*, 5 Pub. Employee Rep. (Ill.) par. 2042, No. S—CB—88—20 (Illinois State Labor Relations Board, Oct. 25, 1989).

Moore appeals, arguing (1) the ISLRB erred in finding the unfair labor practice charge related to the Judith Schmidt settlement and Moore's demotion untimely; (2) AFSCME violated its duty of fair representation by failing to process his grievances to the arbitration stage; and (3) make-whole relief is appropriate.

We affirm.

Because we find the unfair labor practice allegation as it related to the Schmidt settlement was untimely, only a brief presentation of the facts is necessary. On March 22, 1988, Moore, a correctional officer at the Springfield work camp of the Illinois Department of Corrections (DOC), filed an unfair labor practice charge against AFSCME, his bargaining representative. AFSCME admitted Moore applied for a sergeant's position in May 1985. In July 1985, he assumed the duties of a correctional sergeant and was certified by the Department of Personnel on October 1, 1985. In July 1985, Schmidt, a more senior correctional officer, filed a grievance concerning Moore's promotion. In March 1986, AFSCME and DOC agreed to settle the Schmidt grievance in her favor. The settlement included replacing Moore with Schmidt. On May 14, 1986, DOC notified Moore that effective June 1, 1986, his promotion would be rescinded. On May 14, 1986, Moore met with Carol Patton, his union representative, to initiate a grievance concerning his removal from the sergeant's position.

On May 26, 1986, Patton filed three grievances on Moore's behalf.

The grievances were denied after a third-step hearing. On June 21, 1987, Moore was notified of the denial. In December 1987, an AFSCME representative told Moore that AFSCME had not taken his grievances to fourth step. This representative, Steve Borbely, suggested Moore file a "continuing" grievance over the matter. Moore did so, but the grievance was denied.

The instant unfair labor practice charges were filed on March 22, 1988. Moore alleged AFSCME breached its duty of fair representation by not fairly representing him in the settlement of the Schmidt grievance, which caused his demotion; that AFSCME breached its duty of fair representation by not pursuing his grievances to arbitration; and, finally, Moore alleged AFSCME deceived him about the status of his grievances, thus violating its duty of fair representation.

The hearing officer found the unfair labor practice allegation involving the settlement of the Schmidt grievance was untimely. He did not reach the merits of the charge. The hearing officer specifically found the grievances did not toll the statute of limitations with regard to the unfair labor practice. The hearing officer found AFSCME's failure to process the grievances to the fourth step was not in bad faith or arbitrary. The hearing officer noted the decision was based on the merits of the grievances. The hearing officer further found AFSCME's misrepresentation about the status of Moore's grievances did violate section 10(b)(1) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1610(b)(1)). The hearing officer concluded a cease and desist order was appropriate to remedy this violation. *AFSCME (Moore)*, 5 Pub. Employee Rep. (Ill.) par. 2042, No. S—CB—88—20 (Illinois State Labor Relations Board, June 27, 1989, Hearing Officer's Recommended Decision and Order, appended to ISLRB's Decision).

In his exceptions from the hearing officer's recommended order and decision, Moore argued the statute of limitations was tolled by the union's conduct in causing him to delay filing the unfair labor practice charge related to the Schmidt settlement. Moore also argued the union's duty of fair representation started with the Schmidt grievance and its breach of the duty was a continuing process, which was not concluded until December 2, 1987, the date Moore's continuing conduct grievance was denied. Moore then argued that on the facts of the case AFSCME breached its duty of fair representation with respect to the Schmidt settlement.

On October 25, 1989, the ISLRB accepted the recommended order and decision of its hearing officer; and on November 2, 1989, the ISLRB issued its written decision. (*AFSCME (Moore)*, 5 Pub. Em-

ployee Rep. (Ill.) par. 2042, No. S—CB—88—20 (Illinois State Labor Relations Board, Oct. 25, 1989).) The ISLRB did not review the merits of the time-barred allegation. William Brogan, the chairman of the ISLRB, concurred in the finding that AFSCME had breached its duty by failing to inform Moore about the status of his grievances. However, Brogan stated he would not have found the allegations pertaining to the settlement of the Schmidt grievance time barred.

## I. ANALYSIS

■■ ■ A duty of fair representation exists between a bargaining representative and its members. The rulings of the National Labor Relations Board and Federal courts are persuasive authority for construction of similar portions of the State Act. (*American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board* (1989), 190 Ill. App. 3d 259, 264, 546 N.E.2d 687, 690-91; *East Richland Education Association v. Illinois Educational Labor Relations Board* (1988), 173 Ill. App. 3d 878, 902, 528 N.E.2d 751, 765.) In *Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903, the United States Supreme Court stated that it was well established that, as an exclusive bargaining representative of employees, the union had a duty to fairly represent all of its employees, both in collective bargaining and in enforcement of a resultant bargaining agreement. Violation of the duty was an unfair labor practice pursuant to section 158(b) of the National Labor Relations Act (NLRA). 29 U.S.C. §158(b) (1988).

■ The *Vaca* Court found a union breached its duty to fairly represent its members when its conduct toward a member was arbitrary, discriminatory, or in bad faith. The Court noted the union may not arbitrarily ignore a meritorious grievance or perform its duty in a perfunctory fashion. However, an employee does not have an absolute right to arbitrate all grievances. *Vaca*, 386 U.S. at 190-91, 17 L. Ed. 2d at 857-58, 87 S. Ct. at 916-17; see also *International Brotherhood of Electrical Workers v. Foust* (1979), 442 U.S. 42, 60 L. Ed. 2d 698, 99 S. Ct. 2121.

■ In the Seventh Circuit, a union's breach of its duty of fair representation under the NLRA must be the result of intentional misconduct. (*Mason v. Southeastern Illinois Electric Cooperative, Inc.* (7th Cir. 1987), 815 F.2d 38, 41; *Hoffman v. Lonza, Inc.* (7th Cir. 1981), 658 F.2d 519, 520 (failing to give a timely notice of intent to carry a grievance to arbitration did not violate the duty of fair representation because there was no showing the conduct was intentional, invidious, or directed at the employee); *Dober v. Roadway Express,*

*Inc.* (7th Cir. 1983), 707 F.2d 292, 294 (duty not violated by lackluster, inept, or careless union actions).) In other Federal circuits, a breach of the duty under the NLRA could occur from gross negligence if it extinguished an employee's right to seek alternative relief. (*Dutrisac v. Caterpillar Tractor Co.* (9th Cir. 1983), 749 F.2d 1270.) The duty could also be breached by perfunctory handling of a meritorious grievance, if no explanation is provided for the action. *Poole v. Budd Co.* (6th Cir. 1983), 706 F.2d 181.

■ However, the duty of fair representation is not automatically breached when a union takes a position contrary to the interest of some of its members. In *Bowen v. Lockheed-Georgia Co.* (N.D. Ga. 1970), 309 F. Supp. 1210, the court found a settlement of a grievance which affected seniority rights of other members did not constitute a breach of the union's duty to fairly represent all of its members. The court stated:

> "Finally, it is also well recognized that there is no breach of the duty of fair representation where a union *in good faith* takes a position contrary to that of some individuals whom it represents, or supports the position of one group of members against that of another, or agrees to action having adverse repercussions on a particular group of its members." (Emphasis in original.) *Bowen*, 309 F. Supp. at 1213.

■ In the Illinois case of *AFSCME (Mathis)*, 4 Pub. Employee Rep. (Ill.) par. 2049, No. S—CB—87—35 (Illinois State Labor Relations Board, Nov. 17, 1988) (Mathis), the ISLRB recognized that a duty of fair representation existed under the Illinois bargaining acts. The ISLRB stated it would find a violation of the duty when the union, through inadvertence or gross negligence, virtually ignored a member's rights. *Mathis*, 4 Pub. Employee Rep. (Ill.) par. 2049, at X—342 through X—343.

■ The *Mathis* decision indicates that the Illinois State Labor Relations agency took the position taken by circuits, other than the Seventh Circuit, which had considered when actions by a union would breach its duty of fair representation. After *Mathis*, the legislature amended section 10(b)(1) of the Act to state specifically that a labor organization, or its agent, commits an unfair labor practice in a duty-of-fair-representation case only by intentional misconduct. (Ill. Rev. Stat. 1989, ch. 48, par. 1610(b)(1).) This amendment indicates that an unfair labor practice under the Act occurs only through the intentional misconduct of the labor organization.

Moore argues the "secret agreement" to settle the Schmidt grievance, which necessitated a recalculation of the scores on the ser-

geant's test and ultimately disadvantaged Moore, was a violation of AFSCME's duty of fair representation. Moore contends AFSCME had a duty, at minimum, to notify him and to permit him the opportunity to represent himself. Moore argues that the amendment of section 10(b)(1) should be given prospective effect. However, we need not decide the merits of Moore's contention as we find his unfair labor practice charge, as it pertained to the Schmidt settlement, was untimely.

Section 11(a) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of a charge with the Board *** unless the person aggrieved thereby did not reasonably have knowledge of the alleged unfair labor practice." (Ill. Rev. Stat. 1989, ch. 48, par. 1611(a).) Before addressing the merits of whether the Schmidt grievance in any way was a violation of AFSCME's duty to fairly represent Moore, the agency and this court must consider whether the unfair labor practice charge was filed in a timely fashion. We find the ISLRB correctly determined the charge was untimely.

Moore filed his unfair labor practice charge on March 22, 1988. The unfair labor practice complained of, therefore, must have occurred on or after September 22, 1987.

The facts presented below clearly indicate Moore was notified of the "rescission of his promotion" due to the Schmidt settlement on May 14, 1986. Moore testified he contacted Patton to file a grievance on that date. Patton explained briefly the content of the Schmidt settlement and the nature of the grievance. Patton also procured a copy of the Schmidt settlement for Moore. Moore stated that a few weeks prior to the third-step hearing on his grievances, he received a copy of the Schmidt grievance settlement. Moore was disgusted, believed he had been treated unfairly by his union, and believed he had been treated unfairly by management. Moore believed he had not been represented by his union during the Schmidt settlement. The third-step hearing on Moore's grievances occurred on May 6, 1987.

From Moore's own testimony, he knew of the details of the acts which constituted the unfair labor practice and believed his union had not fairly represented him a few weeks prior to May 6, 1987. Even if we take the May 6, 1987, date, rather than the date Moore was notified of his demotion, May 14, 1986, it must be concluded that Moore had notice of the actions constituting the unfair labor practice related to the Schmidt settlement more than six months prior to the filing of his charge.

Moore argues he did not know of the "unfair labor practice" until

after he discovered AFSCME failed to take his grievances to fourth step. Moore contends that knowledge of the individual actions relating to the settlement is not knowledge that an unfair labor practice exists. Moore argues the limitation period is tolled because AFSCME deceived him. Moore also argues AFSCME's conduct with regard to the Schmidt grievance is a continuing unfair labor practice as demonstrated by its failure to process his grievances and its failure to notify him of the status of his grievances.

■ We find the six-month filing period begins to run when the employee learns of the actions which constitute the alleged unfair labor practice. In *Illinois Department of Central Management Services & Rehabilitation Services*, 4 Pub. Employee Rep. (Ill.) par. 2024, Nos. S—CA—88—21, S—CB—88—1 (Illinois State Labor Relations Board, Mar. 22, 1988), the ISLRB found several unfair labor practice charges against an employer were untimely. The employer and the union entered a settlement with regard to closing of a school on certain holidays. The settlement covered several years. Grievances related to the closings were not filed until after the closings in the various years. The ISLRB found the limitation period stated in section 11(a) of the Act started running when the parties learned of the settlement. Similar results were reached in *Illinois Departments of Central Management Services & Agriculture*, 6 Pub. Employee Rep. (Ill.) par. 2012, No. S—CA—89—118 (Illinois State Labor Relations Board, Feb. 5, 1990) (failure to recall an employee occurred more than six months prior to the filing of his charge); and *Public Service Employees Union, Local 46 (Brown)*, 2 Pub. Employee Rep. (Ill.) par. 3029, No. L—CB—87—122 (Illinois Local Labor Relations Board, Nov. 13, 1986) (charge must be filed within six months of union's notice to worker that it will not further process a grievance).

In *Wapella Education Association v. Illinois Educational Labor Relations Board* (1988), 177 Ill. App. 3d 153, 531 N.E.2d 1371, this court interpreted the limitations period in the Illinois Educational Labor Relations Act (IELRA) (Ill. Rev. Stat. 1985, ch. 48, par. 1715). The *Wapella* court found that the limitations period started when the employees had notice of the actions which they alleged constituted a violation of the IELRA.

A similar interpretation applies in the instant case. Here, Moore had actual notice of the Schmidt settlement as early as May 14, 1986. Moore testified he believed his union unfairly represented him in the Schmidt settlement. A few weeks prior to May 6, 1987, his third-step hearing, Moore had an opportunity to review the Schmidt settlement. Regardless of which date is used to start the limitations period, the

charge as it related to the Schmidt settlement is untimely. Moore contends, in essence, that although he knew the acts complained of, he did not understand that the actions of his union could constitute an unfair labor practice. However, in his testimony, Moore stated that he believed his union had treated him unfairly. At this point in time, Moore had a duty to investigate any unfair labor practice which might have occurred. Additionally, it was the action of the union in settling Schmidt's grievance which harmed Moore. Allowing extension of the limitations period until an aggrieved person learns the legal significance of actions would extend the period indefinitely.

This analysis is also consistent with Federal cases. In *Local Lodge No. 1424 v. NLRB* (1960), 362 U.S. 411, 416-17, 4 L. Ed. 2d 832, 838, 80 S. Ct. 822, 826-27, the Supreme Court found two complaints time barred. In interpreting the limitations period set out in section 160(b) of the National Labor Relations Act (29 U.S.C. §160(b) (1988)), the Court held the unfair labor practice must occur within six months of the charge. The Court stated two situations exist where events which occur outside the six-month period may be utilized:

> "The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose §10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice." *Local Lodge No. 1424*, 362 U.S. at 416-17, 4 L. Ed. 2d at 838, 80 S. Ct. at 826-27.

Here, the situation is similar to that presented in *Local Lodge No. 1424*. The allegations regarding the Schmidt grievance could be used as evidence shedding light on the allegations alleging a breach of the duty of fair representation by a failure to process Moore's grievance and by misrepresenting the status of his grievance to him. However, the Schmidt settlement should not be the source of an independent unfair labor practice.

■■ Although we do not reach the question of whether the six-month period stated in section 11(a) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1611(a)) is jurisdictional and not subject to tolling like a statute of limitations, we note that, ordinarily, pursuit of the grievance procedure does not toll the running of the filing period even when the filing period is not jurisdictional. In the case law that has evolved under Federal labor laws, the filing of a grievance concerning an alleged unfair labor practice does not toll the statute of limitations when resort to the grievance procedure is a parallel remedy to the unfair labor practice. (See, *e.g., Kolomick v. United Steelworkers of America, District 8, AFL-CIO* (4th Cir. 1985), 762 F.2d 354, 356.) Here, nothing in the Act or the contract provides that the grievance procedure must be completed before an aggrieved union member may file an unfair labor practice charge against his union.

Other courts, in addressing the tolling question, have reached a similar conclusion when the grievance procedure does not preclude bringing another separate action. (See *International Union of Electrical, Radio & Machine Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.* (1976), 429 U.S. 229, 50 L. Ed. 2d 427, 97 S. Ct. 441 (contract grievance procedure did not toll statute of limitations for an Equal Employment Opportunity Commission action); *Mt. Hood Stages, Inc. v. Greyhound Corp.* (9th Cir. 1980), 616 F.2d 394.) In *Johnson v. Ry. Express Agency, Inc.* (1975), 421 U.S. 454, 44 L. Ed. 2d 295, 95 S. Ct. 1716, the Court noted tolling did not occur when the remedies, although related, were separate, distinct, and independent.

■■ In this court, Moore argues AFSCME's actions concerning the processing of his grievances were a fraudulent concealment of his unfair labor practice relating to the Schmidt settlement. Moore did not raise this argument below. Therefore, it is waived. (*Faculty Association of District 205 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 880, 530 N.E.2d 548.) On the merits, no fraudulent concealment occurred. AFSCME's actions in failing to process Moore's grievances did not conceal the facts related to the Schmidt settlement from him. Therefore, he knew of the actions which he now alleges are an unfair labor practice. We note Moore's cited authority is inapplicable.

■■ Finally, Moore argues that the unfair labor practice with regard to the Schmidt settlement was part of a continuing breach of AFSCME's duty of fair representation. Moore connects the settlement allegations with an argument that the ISLRB erred in finding no violation with respect to AFSCME's decision to not further process his grievances. Moore does not refer to any cases in support of

his assertion that entry of the Schmidt settlement was part of a continuous process which violated the union's duty of fair representation toward him. Therefore, this court need not consider the argument. However, the settlement of the Schmidt grievance caused a singular rescission of Moore's promotion. The situation is similar to that presented in *Local Lodge No. 1424, i.e.*, the Schmidt settlement may be used to shed light on the union's later practice, but may not constitute an independent unfair labor practice. The ISLRB correctly found the unfair labor practice charge, as it related to the Schmidt grievance, untimely.

Moore argues the ISLRB erred in finding AFSCME did not breach its duty of fair representation when it refused to take Moore's grievances to arbitration. The ISLRB argues its determination was correct and no breach of the duty of fair representation occurs when a union in good faith decides not to pursue a grievance. We question whether this issue is properly before the court. Moore did not "except" from the hearing officer's findings on this matter. In his "exceptions," Moore argued the hearing officer's finding that the unfair labor practice related to the settlement was time barred was wrong. Moore argued AFSCME's breach of its duty should be viewed as a continuing course of conduct.

Section 1220.60, effective March 27, 1987, of the ISLRB's rules provides:

> "[P]arties may file exceptions to the hearing officer's recommendation and briefs in support of those exceptions. *A party not filing timely exceptions waives its right to object to the hearing officer's recommended decision and order.* Unless overturned by the Board, the parties shall comply with the recommended decision and order. \*\*\*
>
> (2)
> A) Each exception
>
> * * *
>
> iii) shall state the grounds for the exceptions and shall include the citation of authorities unless set forth in a supporting brief. *Any exception to a ruling, finding, conclusion, or recommendation which is not specifically urged shall be deemed to have been waived.*"

(Emphasis added.) 80 Ill. Adm. Code §1220.60, at 2626 (Supp. 1988).

Since the exceptions here challenged only the statute of limitations question, this court need not consider the allegations with regard to AFSCME's failure to process the grievances. This practice is

consistent with the approach taken in the Federal labor law cases, where a failure to except from an adverse finding by an administrative agency constitutes a waiver of review of the issue. See II C. Morris, The Developing Labor Law, 1710-11 (2d ed. 1983).

On the merits of the issue, the ISLRB is affirmed. A union may settle or abandon a grievance if it acts in good faith. (*Bazarte v. United Transportation Union* (3d Cir. 1970), 429 F.2d 868, 872.) If a union has a rational basis for withdrawing a grievance, even withdrawal of a meritorious grievance would not constitute a violation of the duty of fair representation. (*Poole v. Budd Co.* (6th Cir. 1983), 706 F.2d 181.) Illinois administrative decisions are consistent with Federal decisions. In *ATU, Division 900 (Deimler)*, 4 Pub. Employee Rep. (Ill.) par. 2044, No. S—CB—88—25 (Illinois State Labor Relations Board, Oct. 20, 1988), the ISLRB found a union's failure to pursue a discharge grievance was not a violation of its duty of fair representation. See also *Public Service Employees Union, Local 46 (Brown)*, 2 Pub. Employee Rep. (Ill.) par. 3029, No. L—CB—87—122 (Illinois Local Labor Relations Board, Nov. 13, 1986).

The ISLRB has adopted the Federal standard for determining when a labor organization breaches its duty of fair representation. (See *AFSCME (Mathis)*, 4 Pub. Employee Rep. (Ill.) par. 2049, No. S—CB—87—35 (Illinois State Labor Relations Board, Nov. 17, 1988).) Under this standard, the unintentional actions of a union could breach the duty of fair representation. Section 10(b)(1) of the Act was amended by Public Act 86—412, section 1, effective August 30, 1989, to state that only intentional actions of the union could breach its duty of fair representation. (Ill. Rev. Stat. 1989, ch. 48, par. 1610(b)(1).) The parties respectively argue that the amendment should be applied prospectively or retroactively. However, this court need not decide the application issue. Here, under the less strict standard, the ISLRB found no violation of the duty of fair representation occurred. This finding was supported by the local union president's and State representative's testimonies that they honestly believed the grievance did not have merit after investigating the question. Thus, the ISLRB's decision is supported by the evidence.

Finally, Moore urges this court to find he is entitled to make-whole relief. He contends a violation of the Act was found and make-whole relief is appropriate. He also contends that if this court decides the ISLRB erred on the timeliness question, make-whole relief is necessary. We note that Moore did not except from the hearing officer's determination regarding the remedy for the unfair labor practice Moore established. Additionally, Moore does not cite any authority in

support of his proposition. Thus, we will not redetermine the propriety of the cease and desist order.

For the above reasons, we affirm the order of the ISLRB.

Affirmed.

SPITZ and STEIGMANN, JJ., concur.