FIFTH DIVISION

May 28, 1999

nunc pro tunc
 March 31, 1999

No. 1-98-1389

VIOLAR MURRY, ) Petition for Direct

) Review from the

Petitioner-Appellant, ) Illinois Local

) Labor Relations 

) Board.

)

v. ) No. LCB98004

)

AMERICAN FEDERATION OF STATE, COUNTY )

AND MUNICIPAL EMPLOYEES, LOCAL 1111, )

and ILLINOIS LOCAL LABOR RELATIONS )

BOARD, )

)

Respondents-Appellees. )

PRESIDING JUSTICE HOURIHANE 
delivered the opinion of the court:

Petitioner Violar Murry appeals from a decision and order of respondent Illinois Local Labor Relations Board which dismissed her charge of unfair labor practice against respondent American Federation of State, County and Municipal Employees, Local 1111.  On appeal, petitioner contends that (1) respondent Board misinterpreted certain qualifying provisions of section 10(b)(1) of the Illinois Public Labor Relations Act (Act)(5 ILCS 315/10(B)(1)(West 1996)) in 
determining that no issue of fact or law existed sufficient to entitle her to a hearing in connection with her charge and (2) the dismissal of her aforementioned charge was in error.

For the reasons that follow, we affirm.

BACKGROUND

In July 1997, petitioner filed a charge of unfair labor practice against respondent union, asserting that the latter failed to properly represent her during a January 1997 grievance hearing in violation of section 10(b)(1) of the Act.  Within her charge, petitioner alleged that she was employed by Cook County Hospital as a clerk, and that, in November 1996, she was transferred from her position in the oncology department.  Petitioner understood the transfer to be temporary.  However, she later learned it was permanent, and that a less experienced individual was to assume her former position.  Petitioner complained to her employer, charging a violation of their collective bargaining agreement.

Petitioner further alleged that, during a January 1997 grievance hearing on that charge, her union representatives "took a condescending stance" toward her and "argued with her about the filing of her grievance."  Petitioner also complained that the hearing was neither fair nor impartial, and that it descended into "a forum for false accusations against [her] ***."  Specifically, petitioner averred that Bettina Helm-Thornell informed the hearing officer that she had filed a police report, in October 1996, regarding a threat petitioner purportedly made to Beulah Brent, another hospital employee.  However, Brent, who was also present at the hearing, flatly denied any such event.

Petitioner further alleged that although she was eventually offered her former position in oncology, she was also warned she would be subject to discipline upon her return.

An investigation of the aforementioned charge, as required by section 11 of the Act (5 ILCS 315/11 (West 1996)), ensued.  That investigation culminated in an order of dismissal from Brian E. Reynolds, executive director of respondent Board.  As a part of that order, Reynolds chronicled the facts discovered during the investigation.  According to Reynolds, petitioner had worked in the hospital for over two-and-a-half years, during which time she had become friends with Brent.  Reynolds noted petitioner alleged that Brent was promoted to the position of administrator within the oncology department in 1996, and that Brent subsequently promised her a promotion, within a year, if she transferred from oncology to pediatrics.  Petitioner did so in August 1996, but soon became convinced Brent had lied to her regarding the promotion.

Petitioner complained the following September, requesting her return to oncology.

In October, a representative of respondent union reported to the hospital that petitioner had threatened Brent.  An investigation and report followed.  That report, as Reynolds explained, found that the "personal relationship" between petitioner and Brent ended at the time Brent was promoted to the position of administrator, that no promise of promotion was made to petitioner, and that the transfer complained of by petitioner was routine "cross-training and rotation of all clinical area staff."  According to Reynolds, the report also "expressed uneasiness" about petitioner working under Brent should she return to oncology.

The next month, petitioner filed a grievance concerning her transfer to pediatrics.  A hearing followed on January 30, 1997.

At that hearing, petitioner stated that she no longer desired to return to oncology and, in fact, withdrew her objection to her transfer.  The grievance was accordingly dismissed by the hearing officer as moot.

Reynolds then determined that the aforementioned evidence and allegations did not establish an issue of fact or law sufficient to entitle petitioner to a hearing on her charge.  In so finding, Reynolds relied upon a Seventh Circuit precedent, 
Hoffman v. Lonza, Inc.
, 658 F. 2d 519 (7th Cir. 1981).  Therein, the court of appeals held that, under the National Labor Relations Act (NLRA)(29 U.S.C. §151 
et seq
. (1988)), a union cannot be said to have breached its duty of fair representation unless its actions are shown to have been "intentional, invidious, and directed against an employee ***."  658 F. 2d at 520.  Based thereon, Reynolds dismissed the charge.

Petitioner appealed to respondent Board.  Petitioner argued that the dismissal of her charge against respondent union was in error.  Petitioner maintained there was "credible evidence" that respondent union acted intentionally to disadvantage her during the January 1997 grievance hearing.  Specifically, petitioner argued that there was evidence that she was threatened with disciplinary action if she did not withdraw her objection to her transfer from oncology.  According to petitioner, because she had done nothing to warrant any disciplinary action, such evidence served to establish the hostile motivation of respondent union against her.  Petitioner further argued that she was not allowed to rebut or present her version of events generally.

Petitioner also maintained that Reynolds' reliance upon 
Hoffman
 was error.  According to petitioner, the "intentional misconduct" standard set forth within 
Hoffman
 was no longer good law in light of the subsequent Supreme Court decision in 
Air Line Pilots Ass'n, International v. O'Neill
, 499 U.S. 65, 113 L. Ed. 2d 51, 111 S. Ct. 1127 (1991).  Therein, the Supreme Court 
held that a union breaches its duty of fair representation, under the NLRA, if its actions are shown to have been either arbitrary, discriminatory or in bad faith.  499 U.S. at 67.

In March 1998, respondent Board affirmed the dismissal of her grievance.  Respondent Board also held that the standard of "intentional misconduct," as set forth in 
Hoffman
, was correctly relied upon by Reynolds in determining that no issue of fact or law existed sufficient to entitle petitioner to a hearing in connection with her charge against respondent union.

This appeal followed.

DISCUSSION

I.

The Illinois Public Labor Relations Act took effect in 1984.  Pub. Act 83-1012, eff. July 1, 1984.  Many of its provisions, including section 10 which prohibited a union from restraining or coercing a union member in the exercise of certain guaranteed rights (Ill. Rev. Stat. 1985, ch. 48, par. 1610), closely parallel various provisions of the NLRA.  See 
City of Burbank v. State Labor Relations Board
, 128 Ill. 2d 335, 345, 538 N.E.2d 1146 (1989).  Indeed, at the time section 10 of the Act took effect, that particular provision was virtually indistinguishable from section 8 of the NLRA.  Compare Ill. Rev. Stat. 1985, ch. 48, par. 1610(b)(1) with 29 U.S.C. §158(b)(1)(1988).

In 1988, the Illinois State Labor Relations Board recognized a duty of fair representation under the Act, which, it further deemed, would be held to have been violated when a union, through inadvertence or gross negligence, ignored the rights of a member.  
Moore v. State Labor Relations Board
, 206 Ill. App. 3d 327, 333, 564 N.E.2d 213 (1990).  In so holding, the Illinois State Labor Relations Board declined to follow several Federal decisions, including 
Hoffman
, all of which held that, under the NLRA, a union breaches its duty of fair representation only through intentional misconduct.  
Moore
, 206 Ill. App. 3d at 333.

In 1989, 
section 10(b)(1) of the Act was amended by the General Assembly.  Pub. Act 86-412, eff. August 30, 1989.  As amended, section 10(b)(1) provided "that a labor organization or its agents shall commit an unfair labor practice *** in duty of fair representation case only by 
intentional misconduct
."  Ill. Rev. Stat. 1989, ch. 48, par. 1610(b)(1)(ii).

Two years later, in 1991, the Supreme Court decided 
O'Neill
.  That decision rejected the "intentional misconduct" standard set forth within 
Hoffman
.  It held that, under the NLRA, a union breaches its 
duty of fair representation if its actions are shown to have been arbitrary, discriminatory or in bad faith.  
O'Neill
, 499 U.S. at 67.

Petitioner now contends that, like the "intentional misconduct" standard of 
Hoffman
, section 10(b)(1) of the Act must be interpreted in light of 
O'Neill
, thus requiring respondent Board to have assessed her charge of unfair labor practice under the less stringent standard of the latter decision.  According to petitioner, by employing the term "intentional misconduct," as was used in 
Hoffman
, the General Assembly must be deemed to have intended subsequent Federal case law, including changes in such law, to be accorded binding effect in connection with the interpretation of the "intentional misconduct" provision of section 10(b)(1).  Indeed, petitioner argues that by its inaction following 
O'Neill
, the General Assembly must be presumed to have indicated its approval of that decision as well as its intention that section 10(b)(1) be interpreted in conformity therewith.

This first contention of petitioner concerns the interpretation of section 10(b)(1) of the Act.  Such a contention presents a question of law.  
Boaden v. Department of Law Enforcement
, 171 Ill. 2d 230, 237, 664 N.E.2d 61 (1996); 
Vuletich v. United States Steel Corp.
, 117 Ill. 2d 417, 421, 512 N.E.2d 1223 (1987).  
Review is therefore 
de novo
 (
Boaden
, 171 Ill. 2d at 237; 
Vuletich
, 117 Ill. 2d at 421), although some deference is accorded the construction employed by the agency charged with the administration and enforcement of the statute.  
City of Burbank
, 128 Ill. 2d at 345.

The primary rule of statutory construction requires a court to ascertain and give effect to the intent of the legislature.  
County of Du Page v. Graham, Anderson, Probst & White, Inc.
, 109 Ill. 2d 143, 151, 485 N.E.2d 1076 (1985).  The best indication of that intent is to be found in the very language employed by the General Assembly within the statute.  
County of Du Page
, 109 Ill. 2d at 151.  Accordingly, where the language of a statute is found to be unambiguous, a court must enforce that statute as enacted.  
County of Du Page
, 109 Ill. 2d at 151.

As previously noted, section 10(b)(1) was virtually indistinguishable from section 8(b)(1) of the NLRA at the time the Illinois Public Labor Relations Act took effect in 1984.  Compare Ill. Rev. Stat. 1985, ch. 48 par. 1610(b)(1) with 29 U.S.C. §158(b)(1)(1988).  That changed, however, when section 10(b)(1) was amended, in 1989, to include the qualifying provision of "intentional misconduct."  See 
Jones v. Educational Labor Relations Board
, 272 Ill. App. 3d 612, 626, 650 N.E.2d 1092 (1995).  That amendment was an express departure from the NLRA.  See 
Jones
, 272 Ill. App. 3d at 627.  Accordingly, it must be presumed that the General Assembly intended a different interpretation of section 10(b)(1) than that afforded its Federal counterpart.  See 
Jones
, 272 Ill. App. 3d at 627; 
Moore
, 206 Ill. App. 3d at 333; see also 
City of Burbank
, 128 Ill. 2d at 345.  Under such circumstances, the construction placed upon NLRA section 8(b)(1) by the Supreme Court in 
O'Neill
 is not persuasive and is not to be treated by Illinois courts as having been incorporated into section 10(b)(1) of the Act.  See 
Jones
, 272 Ill. App. 3d at 627-28; see also 
Cook v. Dove
, 32 Ill. 2d 109, 113, 203 N.E.2d 892 (1965).  Indeed, to so incorporate, as petitioner requests, would be tantamount to interpreting the "intentional misconduct" provision of section 10(b)(1) to include 
un
intentional 
conduct.  
Cf
. 
O'Neill
, 499 U.S. at 67.  Such an interpretation would clearly contradict the plain and unambiguous language of that section.  
Cf
. 
Jones
, 272 Ill. App. 3d at 626.  That interpretation is therefore rejected.  See 
Belfield v. Coop
, 8 Ill. 2d 293, 307, 134 N.E.2d 249 (1956).

II.

Petitioner next contends that the dismissal of her grievance was in error.  According to petitioner, she is entitled to a hearing
 based upon the evidence before respondent Board establishing that respondent union acted intentionally against her during the January 1997 grievance hearing.

Pursuant to section 11 of the Act, respondent Board is required to investigate any charge of unfair labor practice.  5 ILCS 315/11(a)(West 1996).  In this regard, respondent Board resembles a grand jury.  
Link v. National Labor Relations Board
, 330 F. 2d 437, 440 (4th Cir. 1964).  A grand jury assesses credibility, draws inferences and, in general, weighs the evidence before it (see 2 Callaghan's Illinois Criminal Procedure §12.37 (1971)) in order to determine whether probable cause exists to establish that "a person has committed an offense ***."  725 ILCS 5/112-4(d)(West 1996).  Where the evidence is found to so establish, an indictment is returned.  725 ILCS 5/112-

4(e)(West 1996).  However, where the grand jury does not find probable cause, criminal proceedings are concluded.  725 ILCS 5/112-4(e)(West 1996).

Much the same process occurs during an investigation of an unfair labor practice charge under the NLRA.  28A Am. Jur. 2d 
Labor & Labor Relations
 §2653 
et seq
. (1994).  Indeed, before issuing an unfair labor practices complaint, National Labor Relations Board representatives evaluate the credibility of all witnesses as a part of their general assessment of the sufficiency of the evidence.  28A Am. Jur. 2d 
Labor & Labor Relations
 §2659 (1994).  Where the evidence is found sufficient to support the underlying charge, a complaint is issued.  29 C.F.R. §101.8 (1998).  Conversely, where the evidence is determined to be insufficient, the charge is dismissed.  29 C.F.R. §101.4 (1998); 28A Am. Jur. 2d 
Labor & Labor Relations
 §2667 (1994).

The pertinent provisions of the Illinois Public Labor Relations Act and supporting administrative regulations envision a similarly broad investigation by respondent Board.  See 5 ILCS 315/11(a)(West 1996).  Indeed, a part of any such investigation may include 
an "
investigatory conference
 with the parties," in which the charging party shall submit "
all
 evidence relevant to or in support of the charge" and in which the respondent shall submit "
all
 relevant evidence in support of its position."  (Emphasis added.)  80 Ill. Admin. Code §1220.40(b)(1), (2)(1996).  Following such an investigation, respondent Board must then determine whether the underlying charge involves "a dispositive issue of law or fact ***" (5 ILCS 315/11(a)(West 1996)); that is to say, whether the charge involves an issue of law or fact sufficient to warrant a hearing.  80 Ill. Admin. Code §1220.40(b)(3)(1996).  Where respondent Board finds such an issue exists, it is required to file a complaint.  5 ILCS 315/11(a)(West 1996); 80 Ill. Admin. Code §1220.40(b)(3)(1996).  On the other hand, where respondent Board finds no such issue, the underlying charge is dismissed.  80 Ill. Admin. Code §1220.40(b)(4)(1996).

Clearly, respondent Board must assess the sufficiency of the evidence disclosed during its investigation prior to issuing an unfair labor practice complaint.  Moreover, like a grand jury or an investigation conducted under the NLRA, that assessment may often include credibility determinations.

It is within the sound discretion of respondent Board to dismiss a charge of unfair labor practice.  See 
Macomb Education Ass'n, IEA-NEA v. Educational Labor Relations Board
, 265 Ill. App. 3d 194, 202, 638 N.E.2d 248 (1994); accord 
Rockford Redi-Mix Co., Inc. v. Zipp
, 482 F. Supp. 489, 493 (N.D.Ill. 1979), 
aff'd
, 632 F. 2d 30 (7th Cir. 1988).  Accordingly, only where that discretion is shown to have been abused will a dismissal by respondent Board be disturbed on appeal.

Here, respondent Board concluded that the evidence before it was not sufficient to warrant a hearing.  In particular, respondent Board found that because Brent denied that petitioner had ever threatened her, petitioner could not credibly argue she was prejudiced in not being allowed to state as much herself at the January 1997 grievance hearing.  Respondent Board also found that allegations by petitioner of hostility and condescension on the part of respondent, even if true, were simply not sufficient to establish intentional misconduct.  Finally, respondent Board found that no evidence of intentional misconduct on the part of respondent union stemming from a warning to petitioner of possible future disciplinary action.  Indeed, according to respondent Board, "[a] return to supervision by [Brent] whom [petitioner] had accused of lying and false pretenses (and who later denied such allegations), and about whom [petitioner] had allegedly made an indirect threat, seems on its face fraught with such peril."

Each of the foregoing conclusions reached by respondent Board is eminently reasonable and supported by the evidence.  Accordingly, it cannot be said that respondent Board abused it discretion in dismissing the charge of unfair labor practice against respondent union.

CONCLUSION

For the aforementioned reasons, we affirm the decision and order of respondent Illinois Local Labor Relations Board.

Affirmed.

GREIMAN and THEIS, JJ., concur.