# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612

---

| | |
|---|---|
| Appellate Court Caption | JOHN MICHELS, Petitioner, v. (No. 4-11-0612) THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; JOHN F. BROSNAN, Executive Director of Said Board, in His Official Capacity Only; JACALYN J. ZIMMERMAN, Chairman of Said Board, in Her Official Capacity Only; MICHAEL COLI, MICHAEL HADE, JESSICA KIMBROUGH, and ALBERT WASHINGTON, Members of Said Board, in Their Official Capacity Only; and CENTRAL MANAGEMENT SERVICES/THE DEPARTMENT OF CORRECTIONS, Respondents.–JOHN MICHELS, Petitioner v. (No. 4-11-0659) THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; JOHN F. BROSNAN, Executive Director of Said Board, in His Official Capacity Only; JACALYN J. ZIMMERMAN, Chairman of Said Board, in Her Official Capacity Only; MICHAEL COLI, MICHAEL HADE, JESSICA KIMBROUGH, and ALBERT WASHINGTON, Members of Said Board, in Their Official Capacity Only; and THE AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31, Respondents. |
| District & No. | Fourth District<br>Docket No. 4-11-0612, 4-11-0659 cons. |
| Rule 23 Order filed | May 23, 2012 |
| Motion to publish allowed | June 25, 2012 |
| Opinion filed | May 23, 2012 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In proceedings based on petitioner's discharge from his position as a senior parole agent with the Department of Corrections, the Illinois Labor Relations Board's dismissal of petitioner's charges against his employer and his union were upheld, since the charges against his employer were not filed within the six-month limitations period in the Illinois Public Labor Relations Act and petitioner did not present any evidence supporting his claim that his union's decision not to pursue his grievance violated its duty to provide fair representation.

Decision Under Review

Petition for review of order of Illinois Labor Relations Board, Nos. S-CA-09-250, S-CB-09-038.

Judgment

No. 4-11-0612, Affirmed.
No. 4-11-0659, Affirmed.

Counsel on Appeal

Stanley H. Jakala and Barbara J. Bell (argued), both of Berwyn, for petitioner.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County, and Municipal Employees, Council 31.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Mary C. LaBrec (argued), Assistant Attorney General, of counsel), for other respondents.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Steigmann and McCullough concurred in the judgment and opinion.

## OPINION

¶ 1    In June 2009, John Michels, petitioner, filed unfair labor practice charges with the Illinois Labor Relations Board (Board) against both his employer, the Illinois Department of Central Management Services (CMS) (acting on behalf of the Illinois Department of Corrections

-2-

(DOC)), in case No. S-CA-09-250 (appellate court case No. 4-11-0612), and his labor union, the American Federation of State, County, and Municipal Employees, Council 31 (Union), in case No. S-CB-09-038 (appellate court case No. 4-11-0659) stemming from his May 2008 discharge.

¶ 2    In January 2011, the Board's Executive Director (Director) dismissed both charges, finding the charge against CMS untimely and the charge against the Union unsubstantiated. Petitioner appealed the Director's findings to the Board and the Board affirmed. *John Michels*, 28 PERI ¶ 10 (ILRB State Panel 2011); *John Michels*, 28 PERI ¶ 12 (ILRB State Panel 2011).

¶ 3    Petitioner appeals the Board's decisions, arguing (1) the unfair labor practices complaint against CMS was timely filed (No. 4-11-0612) and (2) he raised sufficient facts to warrant issuance of an unfair labor practice complaint against the Union (No. 4-11-0659). Because both charges were predicated on the same set of facts, we granted petitioner's motion to consolidate the cases for purposes of this appeal. We affirm.

¶ 4                                    I. BACKGROUND
¶ 5                              A. Petitioner's Discharge
¶ 6    Petitioner was employed as a senior parole agent with DOC. Through his employment he belonged to the Union.

¶ 7    On April 20, 2007, petitioner was placed on 10 1/2 months of paid administrative leave. Petitioner returned to work on May 2, 2008.

¶ 8    On May 20, 2008, CMS discharged petitioner, citing various acts of misconduct involving several parolees that occurred prior to his being placed on administrative leave. Information discovered by CMS and the Illinois State Police during the investigation of petitioner's misconduct revealed acts of misconduct, including excessive use of force, socializing with committed persons, trafficking, filing false reports, verbal and physical harassment of parolees, and various civil rights violations. All of these acts were characterized as blatant violations of DOC's standards of conduct.

¶ 9    Specifically, the documentation contained in the record shows petitioner was discharged for, *inter alia*, the following reasons: (1) acting unprofessionally in a parolee's home by calling the parolee inappropriate names, searching the home without permission, and knocking the parolee's hat off his head while he was handcuffed; (2) exposing himself and urinating in the presence of a female parolee and having an unusual number of contacts with that same parolee in that he visited her daily, transported her to a drug treatment facility on his day off, and continued to visit her after she moved out of his territory; (3) failing to follow procedures by leaving urinalysis cups with a parolee's grandmother so she could test the parolee; (4) threatening to introduce drugs into a parolee's residence, searching that residence without consent, being rude and abusive to the civilians present, and grabbing the parolee by his shirt and throwing him against the wall; (5) allowing a parolee to reside in Missouri without formal approval, telling the parolee not to tell anyone he was letting the parolee do so, and telling the parolee not to use the 800 number and instead to contact petitioner on his cell phone; (6) providing false information to his supervisor; and (7) having

-3-

illegal drugs in his state vehicle when it was confiscated.

¶ 10 This information was made available to the Union during the grievance process. CMS also referred some incidents to the Montgomery County State's Attorney. However, the State's Attorney declined to criminally prosecute petitioner.

¶ 11 Thereafter, the Union grieved petitioner's discharge. However, in a December 2, 2008, letter, the Union notified petitioner it was not going to pursue his grievance to arbitration. Specifically, the letter stated the following:

"This is to inform you that, after careful review of the facts and evidence concerning your discharge from the State of Illinois and the resulting grievance, the Union has determined that your case cannot be successfully argued at arbitration. We forcefully argued your case in an effort to convince the Employer to reverse the discharge. However, when management remained adamant and would not modify its position, the Union determined, based on the merits of the case, not to pursue your grievance further."

The Union negotiated a resolution allowing petitioner to submit a written resignation by December 15, 2008. Upon receipt of petitioner's resignation, DOC would purge his personnel records of any mention of discharge for cause. Petitioner received the letter and proposed resolution on December 4, 2008. Petitioner did not agree to the resolution.

¶ 12                    B. Petitioner's Unfair Labor Practice Charges

¶ 13 On June 4, 2009, petitioner filed unfair labor practice charges with the Board against both CMS and the Union.

¶ 14 The facts underlying both charges are as follows. According to petitioner's charges, in March 2007, petitioner requested an arrest warrant issue on one of his parolees because he did not have an approved host site. The parolee was residing with his sister-in-law, who advised petitioner she wanted the parolee out of the residence. Petitioner informed his supervisor, who denied his request to seek a warrant, advising that the owner of the residence should contact the police to have the parolee removed.

¶ 15 On March 31, 2007, petitioner reported a suspected incident of abuse to the Department of Children and Family Services involving the same parolee. On April 1, 2007, petitioner met with the victim, who reported his uncle, petitioner's parolee, abused him. Based on the report, petitioner again requested an arrest warrant, which, according to petitioner's charge, his supervisor again refused.

¶ 16 On April 3, 2007, petitioner was contacted by the victim's mother, who advised a physical examination had confirmed the possibility of abuse. According to petitioner's charge, after he notified his supervisor of this information, his supervisor asked petitioner to backdate reports to cover up what he characterized as his supervisor's mishandling of the incident. Three weeks later, petitioner was placed on paid administrative leave and eventually discharged on May 20, 2008.

-4-

¶ 17                                    1. *Charge Against CMS*

¶ 18        Petitioner's charge against CMS alleged the misconduct accusations were pretextual and he was actually discharged in retaliation for refusing to backdate the documents. Petitioner argued the discharge amounted to a breach of CMS's contract with the Union because he was treated differently from other employees in violation of section 10 of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10 (West 2008)).

¶ 19        CMS responded to petitioner's charge, arguing (1) petitioner failed to state a claim entitling him to relief because his allegations had no connection to the rights protected under the Act; and (2) petitioner's charge was untimely because he failed to file it within the six-month limitations period provided for by the Act.

¶ 20                                  2. *Charge Against the Union*

¶ 21        Petitioner's charge against the Union alleged the Union violated its duty of fair representation by failing to thoroughly investigate the facts of his case and arbitrate his grievance. Petitioner alleged this failure was motivated by personal hostility because the Union representatives believed he had in fact engaged in the alleged acts of misconduct. The Union did not respond to petitioner's charge.

¶ 22                              C. Executive Director's Findings

¶ 23        Following an investigation, the Director dismissed both of petitioner's charges.

¶ 24                              1. *Findings With Regard to CMS*

¶ 25        The Director found the charge against CMS untimely under the Act. The Director found, pursuant to section 11(a) of the Act, petitioner had six months from the time he first became aware of the unfair labor practice to file his complaint with the Board. The Director found it was undisputed petitioner was aware of the offending conduct at the time of his May 20, 2008, discharge but waited more than a year, until June 4, 2009, after his discharge to file his charge. The Director therefore concluded petitioner's claim was untimely.

¶ 26                          2. *Findings With Regard to the Union*

¶ 27        The Director also found no intentional misconduct on the part of the Union under section 10(b)(1) of the Act. Specifically, the Director found the following:

>     "In this case, there is no evidence [the Union] intentionally took any action either designed to retaliate against [petitioner] or due to his status. It is well settled that under Section 6(d) of the Act, and various federal and state precedents, the exclusive representative has a wide range of discretion in grievance handling, and as the Board has previously held, a union's failure to take all the steps it might have taken to achieve the result desired by a particular employee does not violate Section 10(b)(1), unless as noted above, the union's conduct appears to have been motivated by vindictiveness, discrimination, or enmity.

Herein, [petitioner] contends that the Union failed to properly represent him because it refused to arbitrate his discharge grievance. [Petitioner] argues [the Union's] refusal to arbitrate his grievance stemmed solely from the fact that its representatives believed he committed the wrongful acts with which he had been charged. This argument is meritless, as there is no evidence of disparate treatment. In other words, if there was animosity between [petitioner] and the Union's representatives, due to their belief he committed the misconduct with which he had been charged, there is no evidence that such animosity played a role in the Union's processing of his grievance. However, the Union necessarily had to assess the facts and circumstances of [petitioner's] case, including evidence [CMS] contended proved he filed false reports, violated the civil rights of citizens and parolees, and used excessive force in carrying out his duties; and evaluate whether given that evidence, it could convince an arbitrator to reverse the discharge. [The Union] concluded that it could not overcome the State's case, and while its decision in this regard may have been incorrect, as [petitioner] contends, there is no evidence that its assessment was motivated by vindictiveness, discrimination, or enmity, and therefore, its failure to arbitrate [petitioner's] grievance, or otherwise take all the steps it might have taken to achieve the results desired by him, does not violate the Act." *Michels*, 28 PERI ¶ 12, at 41.

¶ 28                     D. Board's Decision

¶ 29    Petitioner appealed the Director's decisions to the Board, arguing his June 4, 2008, charge against CMS was timely because it was filed within six months of his December 4, 2008, receipt of the Union's letter notifying him of its decision not to pursue his grievance to arbitration. Petitioner also argued sufficient evidence supported his charge against the Union to warrant an evidentiary hearing.

¶ 30    On June 15, 2011, the Board affirmed the Director's dismissal of petitioner's charges against CMS and the Union.

¶ 31    These appeals followed.

¶ 32                        II. ANALYSIS

¶ 33    On appeal, petitioner argues (1) the unfair labor practices complaint against CMS was timely filed (No. 4-11-0612) and (2) he raised sufficient facts to warrant issuance of an unfair labor practice complaint against the Union (No. 4-11-0659). We disagree.

¶ 34          A. Board's Decision To Dismiss Petitioner's Unfair
          Labor Practice Charge Against CMS Because It Was Untimely

¶ 35    Petitioner argues the Board erred in dismissing his unfair labor practice charge against CMS as untimely. Petitioner recognizes a six-month statute of limitations applies but contends that six-month period did not begin to run until December 4, 2008, when the Union notified him it was not going to pursue his grievance to arbitration.

¶ 36    CMS argues petitioner's charge was untimely where he failed to file it within six months

of his discharge. CMS contends the six-month period began to run when he first became aware of the circumstances upon which he bases his charge, *i.e.*, May 20, 2008, the day he was discharged. We agree with CMS.

¶ 37    We note there is no dispute regarding the date petitioner was discharged or when he filed his charges with the Board. The application of a statute of limitations period is a question of law, which we review *de novo*. See *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466, 893 N.E.2d 583, 587 (2008).

¶ 38    "No complaint of an unfair labor practice may issue based upon an unfair labor practice occurring more than six months prior to the filing of a charge with the Board unless the aggrieved party did not reasonably have knowledge of the alleged unfair labor practice." *Chicago Joint Board, Local 200, Retail, Wholesale & Department Store Union v. Illinois Labor Relations Board*, 2011 IL App (1st) 101497, ¶ 22, 951 N.E.2d 1164 (citing 5 ILCS 315/11(a) (West 2004)). "The six-month filing period begins to run when the charging party learns or has notice of the actions which constitute the alleged unfair labor practice." *Chicago Joint Board*, 2011 IL App (1st) 101497, ¶ 22, 951 N.E.2d 1164 (filing period begins to run even if the charging party does not know the legal significance of the acts that constitute the alleged unfair labor practice (citing *Moore v. Illinois State Labor Relations Board*, 206 Ill. App. 3d 327, 335, 564 N.E.2d 213, 218-19 (1990))).

¶ 39    In this case, petitioner does not argue he was unaware of the circumstances surrounding his May 20, 2008, discharge, upon which he bases his charge against CMS. Instead, petitioner contends the limitations period did not start to run until the date the Union notified him it was not going to pursue his grievance, *i.e.*, December 4, 2008. Petitioner argues, without citation to relevant authority, he was required to exhaust his grievance procedures before bringing an unfair labor practice charge against CMS. In fact, none of the cases petitioner cites involve administrative proceedings before the Board or otherwise address the Act's six-month limitations period. Further, this court has previously found nothing in the Act requires the grievance procedure must be completed before an aggrieved union member may file an unfair labor practice charge against his union. See *Moore*, 206 Ill. App. 3d at 337, 564 N.E.2d at 219 (the grievance procedure does not preclude bringing another separate action). We see no distinction where, as here, the charge sought to be filed was against CMS.

¶ 40    Here, petitioner cannot reasonably argue he did not have knowledge of the basis for his discharge on May 20, 2008. Pursuant to section 11(a) of the Act, petitioner had six months from May 20, 2008, to file his unfair labor practice charge against CMS. He did not do so. Instead, petitioner waited until June 4, 2009, to file the charge, which was clearly beyond the Act's six-month limitations period. Thus, the Board did not err in dismissing petitioner's charge against CMS as untimely.

¶ 41          B. Board's Decision To Dismiss Petitioner's Charge
                the Union Violated Its Duty of Fair Representation

¶ 42    Petitioner argues he raised sufficient facts to warrant issuance of an unfair labor practice complaint against the Union. We disagree.

¶ 43                                    1. *Standard of Review*

¶ 44       Section 11(a) of the Act (5 ILCS 315/11(a) (West 2008)) requires the Board to investigate charges of unfair labor practices. When investigating such a charge, the Board is analogous to a grand jury. *Murry v. American Federation of State, County & Municipal Employees, Local 1111*, 305 Ill. App. 3d 627, 633, 712 N.E.2d 874, 878 (1999). Like a grand jury, the Board assesses the credibility of witnesses; draws inferences from the facts; and, in general, decides whether there is enough evidence to support the charge. *Murry*, 305 Ill. App. 3d at 633, 712 N.E.2d at 878-79. If the Board finds an issue of law or fact sufficient to warrant a hearing, the Board will issue a complaint setting forth the issues that warrant a hearing. 5 ILCS 315/11(a) (West 2008); 80 Ill. Adm. Code 1220.40(a)(3) (2012). However, the Board will dismiss the charge if the charge fails to state a claim on its face or the investigation reveals no issue of law or fact sufficient to warrant a hearing. 80 Ill. Adm. Code 1220.40(a)(4) (2012).

¶ 45       When deciding whether there is enough evidence to justify a hearing, the Board must exercise its discretion or judgment. It is within the sound discretion of the Board to dismiss an unfair labor practice charge. See *Macomb Education Ass'n v. Illinois Educational Labor Relations Board*, 265 Ill. App. 3d 194, 202, 638 N.E.2d 248, 254 (1994); *Graves v. Chief Legal Counsel of the Department of Human Rights*, 327 Ill. App. 3d 293, 295-96, 762 N.E.2d 722, 724 (2002) (finding abuse of discretion standard applied instead of clearly erroneous standard where the dismissal of the charge was at the investigatory stage of the proceedings). Thus, if the Board decides there is not enough evidence and dismisses the charge, we ask whether it abused its discretion. *Murry*, 305 Ill. App. 3d at 634, 712 N.E.2d at 879; *Deen v. Lustig*, 337 Ill. App. 3d 294, 302, 785 N.E.2d 521, 529 (2003). The Board abuses its discretion only where its decision to dismiss the charge is clearly illogical. See *Long v. Mathew*, 336 Ill. App. 3d 595, 600, 783 N.E.2d 1076, 1080 (2003). The fact we may have reached a different decision than the Board is not, by itself, sufficient to justify reversing the Board's decision. See *Long*, 336 Ill. App. 3d at 600, 783 N.E.2d at 1080.

¶ 46       An abuse of discretion is found when a decision is arbitrary and reached without employing conscientious judgment or when the decision is clearly against logic. See *Long*, 336 Ill. App. 3d at 600, 783 N.E.2d at 1080; *Deen*, 337 Ill. App. 3d at 302, 785 N.E.2d at 529. Thus, it is not enough for petitioner to make a plausible argument on appeal. Instead, petitioner has to establish that no reasonable person could possibly take the Board's view. See *In re Marriage of Schneider*, 214 Ill. 2d 152, 173, 824 N.E.2d 177, 189 (2005).


¶ 47                          2. *The Board Did Not Abuse Its Discretion*

¶ 48       A union commits an unfair labor practice and violates its duty of fair representation if it commits intentional misconduct in representing an employee. 5 ILCS 315/10(b)(1) (West 2008); *Metropolitan Alliance of Police v. State of Illinois Labor Relations Board, Local Panel*, 345 Ill. App. 3d 579, 587-88, 803 N.E.2d 119, 125 (2003). To establish intentional misconduct, the charging party must prove by a preponderance of the evidence (1) the union's conduct was intentional and directed at the charging party *and* (2) the intentional action occurred because of and in retaliation for some past activity by the employee or

because of animosity between the employee and the union's representatives. *Metropolitan Alliance of Police*, 345 Ill. App. 3d at 588, 803 N.E.2d at 125-26. To establish the second element of intentional misconduct, the charging party must prove unlawful discrimination by demonstrating by a preponderance of the evidence (1) the employee engaged in activities tending to engender the animosity of union agents, (2) the union was aware of the employee's activities, (3) an adverse representation action was taken by the union, and (4) the union took an adverse action against the employee for discriminatory reasons. *Metropolitan Alliance of Police*, 345 Ill. App. 3d at 588-89, 803 N.E.2d at 126.

¶ 49 The sum total of petitioner's argument on appeal amounts to the following. Petitioner argues the Union "harbored a hostility" toward him because it believed he committed a crime, "which the State's Attorney refused to acknowledge" by not prosecuting him. Petitioner also argues the Union "acted arbitrarily" by failing to review the facts "thoroughly and completely." Petitioner maintains had the Union conducted a complete investigation, it would have discovered facts showing he was not being discharged for cause but in retaliation for refusing to backdate documents. According to petitioner, this failure to conduct a complete investigation impermissibly treated him differently from other Union employees. Likewise, petitioner contends the Union's failure to arbitrate his grievance was intentional and invidious based on CMS's retaliation against him for his refusal to backdate documents.

¶ 50 However, petitioner failed to submit *any* evidence to the Board to support his argument the Union's decision not to pursue his grievance to arbitration was intentional, invidious, and directed at him in retaliation for some past activity. *Metropolitan Alliance of Police*, 345 Ill. App. 3d at 588, 803 N.E.2d at 125-26. Further, petitioner did not provide the Board with *any* evidence the Union harbored any animosity toward him. In fact, it is unclear if petitioner's supervisor was even associated with the Union or whether that fact would be at all relevant to petitioner's charges. Based on the record in this case, petitioner's contention the Union harbored hostility toward him because it believed he was guilty, despite the State's Attorney's decision not to prosecute him, is mere speculation and conjecture. However, speculation is not the standard. Petitioner has the burden of proving, by a preponderance of the evidence, *inter alia*, the Union took an adverse action against him for discriminatory reasons.

¶ 51 Instead of providing evidence to the Board, petitioner argues circularly the Union failed to sufficiently investigate the facts surrounding his discharge. He knows this because, had the Union done so, it would have discovered he was actually discharged in retaliation for his refusal to backdate documents. However, short of this statement, which he simply repeats throughout his briefs on appeal, petitioner has failed to make any showing the Union's decision was based on anything other than the merits of his case. A review of the record in this case shows ample evidence of petitioner's alleged misconduct. Based on that evidence, the Union, exercising its broad discretion, could reasonably decide it could not succeed if it pursued petitioner's grievance to arbitration. See *Metropolitan Alliance of Police*, 345 Ill. App. 3d at 588 n.6, 803 N.E.2d at 125 n.6 (section 6(d) of the Act provides substantial discretion to unions in deciding whether to pursue a grievance). Accordingly, the Board did not abuse its discretion in dismissing petitioner's charge against the Union.

¶ 52 Assuming, *arguendo*, the Union was incorrect in its assessment it could not prevail

before an arbitrator, that error, in and of itself, would not be sufficient to find a violation of its duty of fair representation under the Act. See *Jones v. Illinois Educational Labor Relations Board*, 272 Ill. App. 3d 612, 622, 650 N.E.2d 1092, 1099 (1995) (" '[T]he duty of fair representation is not automatically breached when a union takes a position contrary to the interest of some of its members.' " (quoting *Moore*, 206 Ill. App. 3d at 333, 564 N.E.2d at 217)). Petitioner, by assuming what he is trying to prove, has failed to recognize he needed to present *evidence* the Union was *intentionally* discriminating against him. Petitioner's conclusory explanations, without more, are insufficient to set aside the Board's decision.

¶ 53     Finally, we note petitioner also argues on appeal the Union violated its duty to fairly represent him by not providing him with a Union representative when he was interviewed by police during the misconduct investigation. However, the Union activity petitioner complains of took place during a November 27, 2007, police interview, *i.e.*, prior to his May 20, 2008, discharge. As previously stated, petitioner had six months from the time he became aware of the underlying conduct to file an unfair labor practice charge based on that conduct. For the reasons stated above, petitioner's June 4, 2009, charge in this respect was also untimely. See 5 ILCS 315/11(a) (West 2008).

¶ 54                                    III. CONCLUSION

¶ 55     For the reasons stated, we affirm the Board's decision to dismiss the charges against CMS and the Union.

¶ 56     No. 4-11-0612, Affirmed.

¶ 57     No. 4-11-0659, Affirmed.