2021 IL App (1st) 201127-U
No. 1-20-1127
Order filed December 13, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| LOUISE DEBERRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | Petition for Review of Order of |
| v. | ) | Illinois Educational Labor Relations |
| | ) | Board |
| ILLINOIS EDUCATIONAL LABOR | ) | |
| RELATIONS BOARD; VICTOR | ) | No. 2020-CA-0017-C |
| BLACKWELL, Executive Director; GILBERT | ) | |
| F. O'BRIEN, LYNN O. SERED, and LARA D. | ) | |
| SHAYNE, Board Members; and CHICAGO | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Respondents. | | |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

*Held*: Illinois Labor Relations Board properly dismissed unfair labor practice charge absent evidence that teacher was disciplined for engaging in protected union activity or treated differently than other similarly situated teachers.

¶ 1        Petitioner Louise DeBerry, a fourth-grade teacher at Wadsworth Elementary School in Chicago, was suspended without pay, pending dismissal for violating Chicago Board of Education rules and regulations by striking students with a three-foot ruler. DeBerry filed an unfair labor

practice charge claiming that Wadsworth's principal coerced students to fabricate allegations to harass her into leaving the school after she filed several grievances. The executive director of the Illinois Labor Relations Board dismissed her charge, finding no evidence of causation between DeBerry's discipline and her protected activity. The Board affirmed.

¶ 2    DeBerry, who represents herself, appeals, arguing the Board abused its discretion in dismissing her complaint because she presented sufficient evidence showing she was disciplined for engaging in protected activity, including (i) the principal's collaboration with students to falsify allegations against her; (ii) the principal's prior alleged antiunion comments; and (iii) DeBerry's disparate treatment compared to other teachers who engaged in similar conduct.

¶ 3    We affirm the Board. DeBerry presented no evidence supporting: (i) the principal had fabricated the allegations against her as a pretext to discipline her in retaliation for engaging in protected activity, or (ii) the principal's antiunion comments constituted evidence of causation. Moreover, DeBerry presented no proof her treatment differed from that of other teachers similarly situated. Absent any of this evidence, the Board correctly dismissed DeBerry's charge.

¶ 4                                Background

¶ 5    DeBerry alleged that on May 17, 2018, a student in her classroom, nine-year-old M.M, hit F., a nonverbal student with autism, and attempted to take F.'s iPad. DeBerry said she gave M.M. a "time out" and told him to stand in the corner. According to DeBerry, M.M. continued to be disruptive by banging the counter, hitting books, and swinging at the flag. She asked another student, J.W., to get Antoine Brown, a teacher in a nearby classroom, for assistance. DeBerry attempted to lead M.M. into the hallway toward Brown's classroom, but he became aggressive and attempted to pull her down and hit her. Brown and J.W. came into the hallway during the tussle. According to DeBerry, as she struggled with M.M., she was unaware that she struck J.W. with a

three-foot ruler in her hand until she saw J.W. holding his head. DeBerry told J.W. to put cold water on his head and called his mother, T.W., to tell her about his injury.

¶ 6     The next day, T.W. contacted the administrative office to report that DeBerry struck her son, causing a bruise and a welt on his forehead. According to T.W., DeBerry told her she accidentally struck J.W. while "trying to hit another student with the ruler." The administrative office altered Wadsworth's assistant principal about T.W.'s complaint. Wadsworth's principal, Dr. Rashid Shabazz, was unaware of what occurred the day before because DeBerry had not filed an incident report. Shabazz notified the Illinois Department of Children and Family Services as required by law (325 ILCS 5/4 (West 2020)) and reported the incident to CBE's investigative unit, which retained an outside agency to investigate.

¶ 7     The investigator interviewed several students, parents, and teachers. M.M. told the investigator DeBerry made him stand in the corner, and he stepped out to pick up a pen someone had thrown. He said DeBerry hit him with the ruler in the classroom and again in the hallway.

¶ 8     J.W. corroborated M.M.'s statement that he stepped out of the corner to pick up a pen and refuted DeBerry's assertion that M.M. was disruptive by banging the counter, hitting books, or swinging at the flag. J.W. confirmed that DeBerry struck M.M. with the ruler in the hallway and said he attempted to get out of the way but she hit him in the forehead. Further, while interviewing J.W., the investigator learned of another student, J.J, who said he saw DeBerry hit M.M. with the ruler in the classroom. J.J. also said DeBerry regularly hit him on the legs with the ruler, and, at the beginning of the school year, she grabbed him by the collar, nearly tearing off his shirt. J.J.'s mother confirmed that he told her DeBerry hit him and she told DeBerry she did not "want anyone putting their hands on" J.J.

¶ 9    Another student, J.B., disputed DeBerry's contention that M.M. hit F. on May 17. The student said, "no one bothers" F. and that DeBerry struck M.M. with the ruler on his upper thigh in the classroom. Although J.B. did not see what happened in the hallway, he later saw a "knot" on J.J.'s head. J.B. also said he saw DeBerry hit M.M. and J.J. with a ruler in the past.

¶ 10    The investigator issued a report to the CBE. The report concluded that DeBerry violated CBE policies and protocols by: (i) striking J.W. with "significant force" while attempting to hit M.M with the ruler, and (ii) failing to report the incident to Shabazz, or obtain medical attention for J.W. (DCFS's investigation separately concluded charges against DeBerry were unfounded.) Based on the report, the CBE sought to terminate DeBerry's employment. CBE held a pre-suspension hearing that resulted in DeBerry's suspension without pay pending a dismissal hearing.

¶ 11    In September 2019, DeBerry filed with the Board a *pro se* unfair labor practice charge against CBE, alleging Shabazz coached students to fabricate details about the May 17 incident. DeBerry did not identify which section of the Act she believed CBE violated. She noted that she had already filed several grievances, one of which was proceeding to arbitration, and CBE was harassing her to force her to leave Wadsworth School.

¶ 12    The Board's executive director opened an investigation into DeBerry's new charge. DeBerry filed additional documents, asserting that at an October 2017 union meeting, Shabazz accused her and other teachers of "bringing the union in the building trying to throw him under the bus and put a knife in his back." CBE submitted a statement contending it initiated dismissal proceedings due to DeBerry's conduct on May 17, not retaliation for protected activities.

¶ 13    On January 3, 2020, the executive director issued a decision and order dismissing DeBerry's unfair labor practice charge. The executive director treated DeBerry's charge as a claim that CBE had violated section 14(a)(1) of the Act (115 ILCS 5/14(1) (West 2020)) by interfering

with, restraining, or coercing her exercise of a right to engage in protected activity. The executive director found that DeBerry had been involved in protected activity by requesting union representation at a meeting with Shabazz in September 2017, filing a grievance in September or October 2017, and filing another grievance alleging Shabazz violated the collective bargaining agreement with regard to the May 2018 incident. In addition, the executive director assumed DeBerry engaged in protected activities when she filed 13 reports with CBE's inspector general between September 2014 and February 2018.

¶ 14    In dismissing the charge, the executive director found DeBerry had failed to prove causation. Specifically, the executive director found that Shabazz was not involved in the suspension and dismissal proceedings against DeBerry after May 18, 2018, when he called DCFS and contacted the CBE investigation unit. And that nothing indicated Shabazz fabricated evidence or conspired with anyone concerning the May 17th incident. The executive director wrote, "Simply put, there is no evidence the CBE or Shabazz retaliated against DeBerry due to the protected activities she engaged in." Thus, "DeBerry cannot make any showing as to the causation element," and her charge "fails to raise an issue of fact or law" sufficient to justify further Board proceedings.

¶ 15    DeBerry filed exceptions to the executive director's decision and order, claiming, in part, (i) she never said she accidentally struck J.W. with a ruler but instead noticed J.W. holding his head after the incident with M.M. in the hallway; (ii) she filed an incident report the following day; and (iii) CBE had no evidence of her pulling J.J. by the collar in 2017, or J.J. witnessing the May 17 incident. DeBerry also alleged she was treated differently than others reported to DCFS.

¶ 16    The Board contends the DeBerry waived her exceptions by filing them more than 14 days after the executive director issued his order. This violated 80 Ill. Admin. Code 1120.30(c). (The record does not indicate when DeBerry filed the exceptions, which are not dated.)

¶ 17   The Board unanimously affirmed the executive director's dismissal of the unfair labor practice charge. The Board found that DeBerry offered no proof of a causal link between her protected activity and the adverse employment action, nor facts that Shabazz fabricated evidence or conspired against DeBerry regarding the May 17th incident. The Board stated Shabazz contacted DCFS and the CBE investigation unit as obligated under Illinois law and CBE rules.

¶ 18   As to DeBerry's exceptions, the Board stated that even taken as true, she had not provided evidence of a causal link between her protected activity and the adverse action to warrant issuing a complaint. Also, DeBerry failed to demonstrate that CBE treated similarly situated peers (teachers in comparable situations who had not engaged in protected activity) differently. Finally, the Board concluded DeBerry's proof on antiunion motivation involved only Shabazz, and nothing suggested Shabazz had influenced the investigation or that investigators had an antiunion motivation. In short, the CBE investigation unit suspended and dismissed her solely based on the May 17th incident.

¶ 19   DeBerry directly appealed, *pro se*, to this court, arguing the Board should not have dismissed her unfair labor practice claim because she presented sufficient evidence that her dismissal was in response to her having engaged in protected activity.

¶ 20                                Analysis

¶ 21   As a preliminary matter, we address the Board's contention we dismiss the appeal because DeBerry (i) failed to timely file her exceptions to the decision and order and (ii) her brief lacks compliance with Illinois Supreme Court Rule 341.

¶ 22                         Timely Filed Exceptions

¶ 23   A charging party may file exceptions to the executive director's dismissal of the charge and briefs in support of those exceptions no later than 14 days after service of the notice of

dismissal. 80 Ill. Adm. Code 1120.30(c). The Board contends DeBerry filed her exceptions after 14 days, and relying on *Pierce v. Illinois Educational Labor Relations Board*, 334 Ill. App. 3d 25 (2002), claims her late filing deprives this court of jurisdiction and requires dismissal of her appeal.

¶ 24    Unless a party timely files its exceptions with the Board, the decision and order become final and this court lacks subject matter jurisdiction to review it. See *Id.* at 30-31. In short, failure to timely file is deemed waiver, resulting in the decision and order becoming final and binding. This forecloses judicial review as the petitioner has failed to exhaust their administrative remedies by properly seeking the Board's review. *Id.* at 32 (citing *Board of Education v. Illinois Educational Labor Relations Board*, 289 Ill. App. 3d 1019 (1997)).

¶ 25    The Board argues we should follow *Pierce* and *Board of Education* and dismiss the appeal for lack of jurisdiction or, alternatively, find DeBerry waived her exceptions by her late filing. We disagree. In *Pierce* and *Board of Education*, the Board refused to consider the untimely exceptions, deeming them waived. Conversely, the Board addressed DeBerry's exceptions, and the untimeliness issue was never raised. Moreover, as noted, the record does not specify when DeBerry filed the exceptions. Given the absence of evidence of an untimely filing and the Board's consideration of the exceptions before affirming the executive director, we reject the Board's request to dismiss the appeal or deem the exceptions waived.

¶ 26                                Rule 341 Requirements

¶ 27    The Board next contends we should dismiss DeBerry's appeal for failing to comply with Supreme Court Rule 341 governing briefs. Rule 341 requires the parties to present a clear and orderly argument so the reviewing court may ascertain and dispose of the issues involved. *Collier v. Avis Rent A Car System, Inc.*, 248 Ill. App. 3d 1088, 1095 (1993). A reviewing court may dismiss an appeal where the appellant's brief fails to comply with supreme court rules. *Id.* at 1095.

¶ 28     DeBerry's brief lacks proper compliance with Rule 341(h). The brief has no statement of jurisdiction required by Rule 341(h)(ii), fails to discuss the standard of review required by Rule 341(h)(3), and fails to satisfy Rule 341(h)(6), which requires a statement "contain[ing] the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate references to the pages of the record on appeal."

¶ 29     Likewise, her argument section fails to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. Rule 341(h)(7) (eff. Feb.6, 2013). DeBerry cites cases supporting some contentions but fails to cite to pages of the record. Her brief also lacks an appendix. Ill. S. Ct. Rule 342 (eff. Oct. 1, 2019).

¶ 30     We are mindful of the challenges DeBerry faces in representing herself on an appeal. While we appreciate that self-represented status does not excuse compliance with appellate procedures, rule violations do not divest us of jurisdiction. *Brown v. Brown*, 62 Ill.App.3d 328, 332 (1978). We retain the discretion to consider the merits of the appeal where (i) an appellant's brief sufficiently apprises us of the arguments (see *Young v. City of Centreville*, 169 Ill.App.3d 166, 169 (1988)), (ii) the issues involve relatively straightforward facts (*In re Marriage of Burke*, 185 Ill. App. 3d 253, 255 (1989)), and (iii) addressing the issues best serves the interests of judicial economy. See *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 293 (1991).

¶ 31     Dismissal of an appeal for briefing violations should be the last resort, and considered only where meaningful review is impossible. Despite the deficiencies, the facts are straightforward, and DeBerry's brief sufficiently apprises us of her arguments. We will consider her arguments.

¶ 32                                    Sufficiency of the Evidence

¶ 33     Turning to the merits, DeBerry primarily contends that she presented sufficient evidence showing CBE disciplined her in retaliation for engaging in protected activity. As noted, the Board

found that DeBerry did engage in protected activity, so that issue is not in dispute. DeBerry's evidence of retaliation involves her assertions: (i) Principal Shabazz interfered with the CBE investigation by meeting with and coaching students who witnessed the May 17 incident, and (ii) Shabazz allegedly made antiunion comments eight months before May 17. DeBerry also contends she was treated differently than teachers who verbally and physically abused students.

¶ 34                                      Standards of Review

¶ 35        Section 11(a) of the Act (5 ILCS 315/11(a) (West 2020)) requires the Board investigate charges of unfair labor practices. When investigating, the Board acts like a grand jury. *Murry v. Am. Federation of State, County & Municipal Employees, Local 1111*, 305 Ill. App. 3d 627, 633 (1999). As with a grand jury, the Board assesses witness credibility, draws inferences from the facts, and decides whether enough evidence supports the charge. *Id.* If the Board finds an issue of law or fact sufficient to warrant a hearing, the Board will issue a complaint and hold a hearing. 5 ILCS 315/11(a) (West 2020); 80 Ill. Admin. Code 1220.40(a)(3) (2020). Conversely, if the charge fails to state a claim on its face or the investigation reveals no issue of law or fact sufficient to warrant a hearing, the Board will dismiss the charge. 80 Ill. Admin. Code 1220.40(a)(4) (2020).

¶ 36        Dismissal of an unfair labor practice charge falls within the Board's sound discretion. *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612, ¶ 45. When the Board determines there is insufficient evidence and dismisses, we review its determination for an abuse of discretion. *Id*. The Board abuses its discretion when its decision is "clearly illogical" or "arbitrary and reached without employing conscientious judgment." *Id*. ¶¶ 45-46. A "plausible argument" by the petitioner is not enough. *Id*. ¶ 46. Rather, the petitioner must "establish that no reasonable person could possibly take the Board's view." *Id*. Even if we would have reached a different conclusion, by itself, that does not justify reversing the Board's decision. *Id*. ¶ 45

¶ 37    W review the Board's factual findings under a manifest-weight-of-the-evidence standard. *Walk v. Illinois Department of Family Services*, 399 Ill. App. 3d 1174, 1186 (2010).We deem an administrative agency's findings of fact as *prima facie* true and correct. We will find them against the manifest weight of the evidence only "if the opposite conclusion is clearly evident." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). "If any evidence fairly supports the administrative agency's action, the decision is not against the manifest weight of the evidence and must be sustained on review." *Jones v. Illinois Department of Employment Security*, 276 Ill. App. 3d 281, 284 (1995).

¶ 38                              No Evidence of Causation

¶ 39    An employee who brings an unfair labor practice charge has the burden of showing an issue of law or fact existed sufficient to warrant the Board filing a complaint against CBE and holding a hearing on whether the employee was disciplined for engaging in protected activity. 115 ILCS 5/15 (West 2020). Under section 14(a)(1) of the Act, the employer may not interfere with, restrain, or coerce employees in exercising their rights under the Act. To establish a violation of section 14(a)(1) the charging party must prove: (i) the employee engaged in protected union activity; (ii) the employer had an awareness of that activity; and (iii) the employer took adverse action against the employee for engaging in the activity. *Thornton Fractional High Sch. Dist. No. 215 v. Illinois Educational Labor Relations Board*, 404 Ill. App. 3d 757, 766 (2010). As noted, the Board found that DeBerry had engaged in protected activity and that CBE knew about it. Thus, we must decide whether the Board's finding that DeBerry failed to present evidence showing she was disciplined because of protected activity was against the manifest weight of the evidence.

¶ 40    To the extent that DeBerry's brief argues that her conduct on May 17 did not warrant disciplinary action or the CBE's investigation and dismissal proceedings were unfair, those issues

are not before us. We must decide whether DeBerry presented evidence that the proceedings to dismiss her were connected with retaliation for her protected activity. We agree with the Board that she failed to present evidence sufficient to connect the dismissal to her protected activity.

¶ 41     DeBerry primarily argues that Principal Shabazz conspired with or coerced students to fabricate evidence against her. In her brief, she says it *appears* Shabazz held private discussions with M.M. and J.W. after the investigation began, and her position of authority *could* influence the students. She also asserts that only male students were questioned, without explaining why this is significant. In short, DeBerry presents speculation and not actual evidence.

¶ 42     DeBerry also suggests the CBE investigation was not independent, and Shabazz manipulated the findings. She points to the CBE's investigation having taken over a year as evidence of collaboration between Shabazz and the CBE investigator. But DeBerry presented no facts suggesting Shabazz met with students after the investigation began or if, he did, what he said to them. Nor does she present evidence showing collaboration between Shabazz and the CBE investigator. Assertions that it *appears* Shabazz met with students or *could* have influenced them amount to speculation, which is insufficient to create an issue of law or fact warranting a complaint or hearing. See, e.g., *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999) ("charge consisting of mere speculation and conjecture does not constitute substantial evidence").

¶ 43     Moreover, DeBerry raised the same allegations before the Board, which investigated, considered the proof, and found no evidence of collusion between Shabazz and the students. Again, we deem the Board's findings of fact as *prima facie* true and correct and will find them against the manifest weight of the evidence only "if the opposite conclusion is clearly evident." *Cinkus,* 228 Ill. 2d at 210. DeBerry presented no evidence to support setting aside the Board's findings of fact.

¶ 44    DeBerry further contends Principal Shabazz's alleged antiunion remarks in October 2017 constitute evidence of causation between DeBerry's protected activity and the CBE's disciplinary action against her. But, as the Board found, even assuming Shabazz was unhappy about DeBerry's protected activity, he took no action until he reported the May 17 incident to DCFS, as required by law. See 325 ILCS 5/4(a)(4) (West 2020). The Board found the complaint from J.W.'s mother triggered the CBE's investigation, and DeBerry presented nothing to show that after May 18, Shabazz was involved in or in any way influenced the investigation. Moreover, as the Board found, Shabazz's alleged antiunion animus could not be imputed to the CBE investigation unit, and DeBerry presented no evidence that the investigators had antiunion motivation.

¶ 45                              No Evidence of Disparate Treatment

¶ 46    DeBerry contends she was treated differently from other teachers at the school and suggests this shows the CBE had an improper motive in disciplining her. DeBerry makes numerous allegations that other Wadsworth staff and teachers verbally and physically abused students. Even if these disheartening allegations are true, they are not evidence of disparate treatment because DeBerry fails to allege that these teachers and staff were similarly situated, that is, also engaged in protected activity but not disciplined for physically abusive conduct toward students. The Board found no evidence that others similarly situated were treated differently than DeBerry. Absent evidence, the opposite conclusion is "clearly evident" we must affirm. *Cinkus,* 228 Ill. 2d at 210.

¶ 47    Affirmed.