MACOMB EDUCATION ASSOCIATION, IEA-NEA, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—93—0546

Argued May 25, 1994.—Opinion filed June 29, 1994.

KNECHT, J., specially concurring.

Wanda Van Pelt (argued), of Illinois Education Association/NEA, of Edwardsville, for petitioner.

Lawrence J. Casazza (argued) and Maureen Anichini Lemon, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for respondent Macomb Community Unit School District No. 185.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-

licitor General, and Alison E. O'Hara, Assistant Attorney General (argued), of counsel), for respondent Illinois Educational Labor Relations Board.

JUSTICE GREEN delivered the opinion of the court:

Section 15 of the Illinois Educational Labor Relations Act (Act) provides that when "an employer, an individual or a labor organization" files a charge of an unfair labor practice with the Illinois Educational Labor Relations Board (Board), an investigation shall be made and, if thereafter the Board "finds that the charge states an issue of law or fact, it shall issue and cause to be served upon the party complained of a complaint" and proceed, in due course, to a hearing. (115 ILCS 5/15 (West 1992).) The Board has implemented section 15 by enactment of its rule 30, which states in part:

"(4) If the Executive Director concludes that the investigation has established that there is an issue of law or fact *sufficient to warrant a hearing*, he shall issue a complaint ***.

(5) If the Executive Director concludes that the investigation has established that there is not an issue of law or fact *sufficient to warrant a hearing*, the Executive Director shall dismiss the charge." (Emphasis added and omitted.) 80 Ill. Adm. Code § 1120.30(b)(4)(5) (1992).

In this case, the Board was presented with a charge of an unfair labor practice and dismissed it and refused to file a complaint upon the basis that, although the charge presented some questions of fact or law, any impact upon an aggrieved party was "*de minimis.*" We conclude the Board acted within its power and discretion and affirm its order.

On March 8, 1991, acting pursuant to section 15 of the Act, Macomb Education Association (Association), exclusive bargaining representative for the teachers of respondent, Macomb Community Unit School District (District), filed an unfair labor practice charge with the Board against the District alleging:

"On or about January 22, 1991, the [District], by its officers, agents, and representatives, has interfered, restrained and coerced its employees in the exercise of rights guaranteed under the IELRA, and failed and refused to bargain in good faith with the Charging Party as the exclusive representative of its professional employees by unilaterally changing employees' job duties (requiring employees to act as security guards during their planning period) without prior notice to or bargaining with the charging party."

Essentially, the Association sought to require the District to rescind a program where teachers were required to occasionally sit during their planning periods in the halls of the school and monitor the

entrance to determine the authority of those entering. The Association also requested that the teachers be made whole.

The Association and the District submitted position papers to the Board. On July 3, 1991, the executive director of the Board issued a recommended decision and order which referred the dispute to arbitration because it appeared to involve allegations of both a breach of the parties' collective-bargaining agreement and a violation of section 14(a)(5) of the Act (115 ILCS 5/14(a)(5) (West 1992)), which makes refusal to bargain collectively in good faith when required to do so an unfair labor practice. Section 14(a)(5) of the Act also permits the Board to refer to arbitration charges of unfair labor practices which concern interpretation or application of a collective-bargaining agreement where, as here, the agreement contains a grievance and arbitration procedure.

On February 28, 1992, the parties participated in a hearing before the arbitrator. On May 7, 1992, the arbitrator issued an award denying any grievance under the contract. That document concluded that the limited supervision program imposed on the teachers had only minimal and temporary impact on teachers' planning time and did not violate the contract. The arbitrator concluded that the question of whether the Association had violated the Act was not before him and declined to rule on that question. On December 31, 1992, the executive director of the Board issued a recommended decision and order which would dismiss the unfair labor practice charge. The recommendation was based upon the theory that the arbitration award necessarily determined that the District had no duty to bargain over the imposition of the hall monitoring plan.

At each stage of the proceedings, the Association maintained that a complaint should issue. This included the filing of exceptions to the executive director's recommendation. On July 8, 1993, in a split decision, the Board issued an opinion and order which denied the request for a complaint and dismissed the charge. However, the Board rejected the reasoning of the director that the arbitration award determined the question of whether the District was required under the Act to bargain with the Association as to the imposition of the monitoring program. Rather, the Board concluded that although questions of law or fact may exist as to whether a "technical violation of the Act" occurred, the impact on the Association and its teachers was "*de minimis*" and the "purposes and policies of the Act" would not be furthered by proceeding to a hearing. (*Macomb Community Unit School District #185*, 9 Pub. Employee Rep. (Ill.) par. 1095, at IX—332, IX—333, No. 91—CA—0040—S (Illinois Educational Labor Relations Board April 22, 1993) (hereinafter 9 Pub. Employee Rep.

(Ill.) par. 1095).) The Association made a timely filing for judicial review of that order by this court pursuant to section 16(a) of the Act. 115 ILCS 5/16(a) (West 1992).

Various undisputed material facts were before the Board at the time it made its decision. Macomb High School was located next to an armory and the District maintained that several bomb threats had been made at the time of the Persian Gulf crisis. Accordingly, without negotiations with the Association, the Macomb High School administration instituted a security program for the high school as set forth in a memo issued by the school's principal on January 25, 1990.

The memo stated that as part of the security program, all doors to the school, except the east and south doors, would remain locked. Teachers were required on a rotating schedule to sit at a table during their class preparation periods and monitor the east and south entrances. Teachers could do their class preparation work on the tables during their security duty. During the fifth and sixth periods, aids would be available to monitor the east and south entrances. A hall supervision roster was attached to the security memo indicating that each teacher would have to perform security duty every third week.

On January 25, 1991, the Association, on behalf of the high school faculty, sent a memo to the high school administration protesting the hall supervision security program, claiming that the additional assignment would be a significant change in working conditions. The memo indicated that the faculty would participate in the program but only under protest. In response, the district superintendent sent a memo to the Association explaining the reasons for the program and urging the cooperation of the faculty. The memo maintained that the teachers could perform their preparation work while sitting at tables at the entrances. The teachers were directed to question persons as to their reasons for entering the building but were directed not to attempt to prevent people from entering. The teachers were instructed to seek help if that was necessary. The District announced that the program was terminated at the end of five weeks because of the conclusion of the Persian Gulf War. Thus, apparently, no teacher had to perform this duty on more than two occasions.

●1 The Board's opinion and order noted that in *Central City Education Association v. Illinois Educational Labor Relations Board* (1992), 149 Ill. 2d 496, 523, 599 N.E.2d 892, 905, the supreme court had prescribed a three-part test to determine whether an issue was subject to mandatory bargaining under section 10 of the Act. The first aspect of that test is to determine whether the matter concerns

wages, hours or terms and conditions of employment. If the answer to that question is in the negative, no duty exists. If answering in the positive, then the question arises as to whether it also concerns inherent managerial authority. If the answer to that question is no, the issue requires bargaining. If the answer is yes, the Board must then balance the interests and determine which predominates.

The Board's order also noted that the Association contended that the executive director must have deemed that an emergency existed in order to justify his determination that the issue of the introduction of the hall monitoring program was not subject to mandatory bargaining. The Board agreed with the Association that a question of fact was present as to whether an emergency existed at the time the monitoring program was adopted and that a question of law existed as to whether the program was a subject of mandatory bargaining. The Board then stated as follows:

> "Ordinarily, we would, thus, issue a Complaint and Notice of Hearing. However, we are unwilling to do so in this case. Even assuming *arguendo* that the security program was a mandatory subject of bargaining, we take note that the arbitrator found that the security program impacted teacher planning time minimally and temporarily. Arbitrator's award, p. 12. The program lasted five weeks, and teachers served only once every three weeks. We find that the program had a *de minimis* effect on teacher planning periods." (9 Pub. Employee Rep. (Ill.) par. 1095, at IX—332.)

In a footnote, the Board explained that the effect of the actions of the District in imposing the program was *de minimis* to the individual teachers as their schedules were altered only in a minimum way and temporarily and that, accordingly, the effect on the Association itself was only minimal. 9 Pub. Employee Rep. (Ill.) par. 1095, at IX—333 n.2.

As precedent for refusing to issue a complaint because of the minimal effect of any action of the District which may be wrongful, the Board relies first upon its decision in *Board of Governors of State Colleges & Universities*, 6 Pub. Employee Rep. (Ill.) par. 1132, Nos. 90—CA—0020—S, 90—CA—0025—S, 90—CA—0027—S, 90—CB—0007—S, 90—CB—0012—S, 90—CB—0013—S, 90—CB—0014—S, 90—CB—0015—S, 90—CA—0026—S (Illinois Educational Labor Relations Board September 12, 1990). There, the Board refused to issue a complaint upon a charge of unfair labor practices against an employer and a union both subject to the Act. The party bringing the charge was an employee of the employer which had a collective-bargaining agreement with the union. The employee objected on various grounds to the fair-share provision of the collective-

bargaining agreement concerning the fair-share amount the employee was required to pay to the union for the advantages the employee received from the union although he was not a member thereof. The Board agreed that statutorily required notices might not have been given to the employee but concluded the employee had actual notice. Thus, the Board concluded that the notice violations were only technical and produced only *de minimis* damage to the employee.

The *State Colleges & Universities* opinion relied upon the decision of the National Labor Relations Board (NLRB) in *American Federation of Musicians, Local 76* (1973), 202 N.L.R.B. 620, 82 L.R.R.M. 1591. There, an unfair labor charge had been filed under circumstances where the respondent union's business agent had written a letter to a supervisor, not then a member of the union, telling the supervisor that charges likely to result in a fine or expulsion from the union would result unless that individual ceased working for his father. The record there showed that no action was taken on the threat, and later, the threat was withdrawn. The NLRB ruled that even though improprieties on the part of the union might have occurred, a complaint should not issue. The NLRB stated:

"We are not here disposed to find the quantum of misconduct sufficient to constitute a violation. In this connection, we believe the courts are coming to the view that violations having little or no impact upon employee exercise of statutory rights should not form the basis of either a proceeding or a remedy under our Act." (*American Federation of Musicians*, 202 N.L.R.B. at 621, 82 L.R.R.M. at 1594.)

The NLRB concluded as follows:

"In sum, in view of the increasing need for expedition in the processing of cases, we have concluded that we ought not expend the Board's limited resources on matters which have little or no meaning in effectuating the policies of this Act. Thus, in this insubstantial case, we would find that the conduct involved, although it may have been in technical contravention of the statute as interpreted by this Board, was nevertheless so insignificant and so largely rendered meaningless by Respondent's subsequent conduct that we will not utilize it as a basis for either a finding of violation or a remedial order." *American Federation of Musicians*, 202 N.L.R.B. at 622, 82 L.R.R.M. at 1594.

The Board also relied on *Carmi Community Unit School District #5*, 6 Pub. Employee Rep. (Ill.) par. 1020, No. 88—CA—0024—S (Illinois Educational Labor Relations Board January 11, 1990). There, during a strike, the school district modified the working conditions of the teachers by providing those continuing to work with a free lunch.

After a hearing, the Board found that the modification in the working conditions had so minimal an effect on the rights of the strikers as to not be actionable.

Board Chairman Berendt dissented to the instant opinion and order, maintaining that the Board's action was premature. He further stated that section 15 of the Act expressly requires issuance of a complaint and a hearing on the merits when questions of law or fact exist regardless of the impact on the complaining party. He notes that the Board admitted that such questions existed. He maintained that the balancing test of *Central City* should be applied on such a hearing as the door monitoring program concerned both issues of terms and conditions of employment and managerial functions. He deemed the factual issue of whether an emergency existed was a crucial factor in determining whether the District's action in unilaterally installing its program was proper. See *Wilmette School District No. 39*, 4 Pub. Employee Rep. (Ill.) par. 1038, No. 85—CA—0078—C (Illinois Educational Labor Relations Board, February 11, 1988); *Kewanee Community Unit School District No. 229*, 4 Pub. Employee Rep. (Ill.) par. 1136, No. 86—CA—0081—C (Illinois Educational Labor Relations Board September 15, 1988).

Chairman Berendt distinguished *American Federation of Musicians* on the basis that there, the party charged did not follow through on its threat, while here the monitoring program continued until its purported need abated. He distinguishes this case from *Carmi* on the basis that there, unlike here, an evidentiary hearing was held before an administrative law judge. In addition, there, the promise of a free lunch was not enough to persuade strikers to return to work, while here the change in work conditions obviously had at least some effect upon the teachers. He also deemed the majority decision inconsistent with the Board's decision in *Wilmette*. In *Wilmette*, the school district was held to have committed an unfair labor practice by unilaterally reducing teacher lunch periods, some by as much as 15 minutes in order to meet statutory requirements that teachers put in 300 minutes of instruction each day.

Berendt's dissent also gave importance to the impact on the Association's power to bargain, which might arise even if the impact on the teachers as individuals was very minor. This court noted the importance of such a factor in *Board of Education of Sesser-Valier Community School District No. 196 v. Illinois Educational Labor Relations Board* (1993), 250 Ill. App. 3d 878, 884, 620 N.E.2d 418, 422. (See also *In re Medo Photo Supply Corp.* (1942), 43 N.L.R.B. 989, 997-98, quoting *NLRB v. Acme Air Appliance Co.* (2d Cir. 1941), 117 F.2d 417, 420.) The position of the Association on appeal follows the analysis of the dissent very closely.

•2 To the extent that section 15 of the Act, which concerns the issuance of complaints, is ambiguous, we give substantial deference to the interpretation placed upon it by the Board unless that interpretation is clearly wrong. (*Central City*, 149 Ill. 2d at 510, 599 N.E.2d at 898; *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 516, 554 N.E.2d 155, 163-64.) Here, the Board had enacted its rule 30, which conditions the issuance of a complaint upon the question of law or fact presented being "sufficient to warrant a hearing." Moreover, we are to give some deference to the precedent of the previous decisions of the Board unless they are definitely wrong. (*City of Freeport*, 135 Ill. 2d at 516, 554 N.E.2d at 163-64.) The theory that the impact of conduct constituting an unfair labor practice does not require issuance of a complaint if the resultant damage is *de minimis* has been recognized in previous cases before the Board. We give deference to that precedent and now turn to see whether the situation before the Board here comes within that precedent.

We recognize that the misconduct charged here was not merely technical as in *State Colleges & Universities*. The District did not terminate the alleged misconduct before litigation as occurred in *American Federation of Musicians*, nor did bargaining begin on the change in working conditions before a decision was made as in *Carmi*. No evidentiary hearing was held before dismissal as took place in the two last-mentioned cases.

Nevertheless, the Board was in a good position to judge the impact of the decision upon the Association and its members. The decision of the arbitrator finding that the impact upon the teachers was minimal was before the Board. Under the plan, no teacher had to perform hall monitoring more than twice, and the record does not show that any teacher did not have part of that time available to plan for future classes. The impact on teachers was much less than in *Wilmette*, where some teachers lost as much as 15 minutes of their lunch period each school day.

We need not rely upon the expertise of the Board to conclude that the impact of the unilateral conduct of the District was extremely mild on the teachers themselves. We are also required to consider the impact of that conduct on the Association as a bargaining entity. (*Sesser-Valier*, 250 Ill. App. 3d at 884, 620 N.E.2d at 422.) In this regard, we rely to some extent on the expertise of the Board (*Decatur Federation of Teachers v. Illinois Educational Labor Relations Board* (1990), 199 Ill. App. 3d 190, 197, 556 N.E.2d 780, 784) and uphold the conclusion of the majority of the Board that the impact was *de minimis* in this respect as well. No underlying facts

were in dispute in this regard, and we agree with the Board that any corrosive effect on the parties' bargaining relationship is closely related to the impact on the teachers of the change in terms and conditions of employment.

The Board's majority opinion and order concluded by determining that issuance of a complaint would not further the purposes and policies of the Act explaining that the expenditure of Board resources would be undesirable in this case where the impact was so negligible. The dissent, on the other hand, expressed a desire to take the case even if, *arguendo*, the *de minimis* rule was applicable, because clarification could be given as to the applicability of the balancing test in regard to unilateral changes made by a school district relating to the types of duties involved here and in regard to unilateral changes in terms and conditions of employment made under exigent circumstances. We conclude that the question of whether to take the case in order to clarify the law was within the discretion of the Board. Likewise, the Board's use of its resources was a proper consideration in the narrow circumstances where the impact of conduct giving rise to a charge is *de minimis*. The decision of whether to issue the complaint under these circumstances was within the discretion of the Board.

The majority opinion and order of the Board made clear that questions of law and fact were presented, and the Board was not finding that the District was justified in making the unilateral changes in the terms and conditions of employment. The basis of the Board's decision was the *de minimis* impact of the changes. We, likewise, are not passing upon the conduct of the District but find the decision of the Board supported by the record. (See *Decatur Federation of Teachers*, 199 Ill. App. 3d at 197, 556 N.E.2d at 784.) We affirm.

Affirmed.

COOK, J., concurs.

JUSTICE KNECHT, specially concurring:

I concur because of the deference owed to the Board's expertise on educational labor matters and its interpretation of the question of law presented. I am, however, concerned by the use of the phrase "*de minimis*," and the implication it may be some sort of a meaningful standard.

Does *de minimis* apply only to the effect of a unilateral change on individual teachers, or teachers as a group? Does *de minimis* also apply to the effect a given action or incident had on the Association's

power to bargain? Does it apply to whether a violation of the Act is *de minimis*? Does it apply to the impact of a violation on the Board's statutory mission to promote an orderly and constructive relationship between the teachers and the district? Does *de minimis* always mean the same thing? And what does it mean—a trifle, too small to be noticed, not worth bothering with?

Something that has a minimal effect on one teacher (one or two hall supervision assignments) does not necessarily have a minimal effect on teachers as a group. One cannot *infer* a unilateral change which has a minimal or slight effect on teacher planning periods also has a minimal effect on the Association's ability to represent the teachers and bargain for them. However, we can only speculate what effect any alleged violation may have had on the Association's status as a bargaining representative because that issue was never raised and finds its way into the case only because of a footnote in the Board's decision.