NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 250283-U

NO. 4-25-0283

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 12, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SCOTT HOWARD, | ) | Direct Review from the |
|     Petitioner, | ) | Illinois Educational Labor |
|     v. | ) | Relations Board |
| THE ILLINOIS EDUCATIONAL LABOR | ) | No. 24-CA-0020-C |
| RELATIONS BOARD, an Administrative Agency of the | ) | |
| State of Illinois; VICTOR E. BLACKWELL, Executive | ) | |
| Director of the Illinois Educational Labor Relations | ) | |
| Board; LARA D. SHAYNE, IELRB Chairman; CHAD | ) | |
| D. HAYS, IELRB Member; MICHELLE ISHMAEL, | ) | |
| IELRB Member; STEVE GROSSMAN, IELRB | ) | |
| Member; JOSEPH "NICK" GUTIERREZ, IELRB Staff | ) | |
| Attorney/Investigator; THE BOARD OF EDUCATION | ) | |
| OF PEORIA PUBLIC SCHOOLS DISTRICT NO. 150, | ) | |
| Employer, | ) | |
|     Respondents. | ) | |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the Illinois Educational Labor Relations Board did not abuse its discretion when it dismissed petitioner's unfair labor practice charge for failing to make a *prima facie* showing of an unfair labor practice under section 14(a)(1) of the Illinois Educational Labor Relations Act (115 ILCS 5/14(a)(1) (West 2022)).

¶ 2    In November 2023, petitioner, Scott Howard, filed an unfair labor practice charge with respondent, the Illinois Educational Labor Relations Board (Board), alleging that respondent, Peoria Public School District No. 150 (District) violated section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1) (West 2022)). In November 2024, the executive

director, Victor E. Blackwell, issued a recommended decision and order dismissing the charge. Thereafter, Howard filed exceptions to the executive director's recommended decision, and in February 2025, the Board issued its opinion and order, dismissing the charge in its entirety.

¶ 3        Howard appeals, asking this court to (1) grant his Illinois Supreme Court Rule 329 (eff. July 1, 2017) motion to supplement the record, (2) vacate the Board's dismissal, and (3) remand with directions to issue a complaint and proceed to an evidentiary hearing on the merits.

¶ 4        We disagree and affirm.

¶ 5                                I. BACKGROUND

¶ 6        Howard was employed by the District for 14 years. In July 2022, he transferred from the position of custodian to the position of school resource officer (SRO). In February 2023, he transferred to the position of head custodian. The District and the Service Employees International Union, Local 8 (Union) were parties to a collective bargaining agreement (CBA) that covered custodial employees and was effective from July 1, 2018, to June 30, 2023. Thereafter, the District and the Union entered into a new CBA, effective July 1, 2023, to June 30, 2026. The SRO position was in a different bargaining unit and covered by a different CBA.

¶ 7                        A. The Unfair Labor Practice Charge

¶ 8        In November 2023, Howard filed an unfair labor practice charge against the District with the Board. (We note that Howard also filed a charge against the Union, but he does not address that charge in this appeal.) In his charge, Howard alleged the District committed an unfair labor practice within the meaning of section 14(a)(1) of the Act (115 ILCS 5/14(a)(1) (West 2022)) by violating the terms of the CBA when it (1) demoted him, (2) disclosed his demotion to other employees, and (3) deviated from the CBA's progressive discipline structure.

¶ 9        According to Howard's charge, on May 4, 2023, the District issued a written and

verbal warning to Howard for his failure to adhere to the District's cleaning practices in two separate incidents. This was the first time Howard was disciplined. The same day, the District demoted Howard to second-shift custodian. Howard asserted that under the CBA, the District may only deviate from the progressive discipline structure in cases of serious misconduct. The CBA provides the following steps for the progressive discipline structure: (1) documented verbal warning or reprimand, (2) documented written warning or reprimand, and (3) suspension with or without pay.

¶ 10　　　On May 5, 2023, the assistant director of building and grounds sent an e-mail to several District employees with the subject line "Involuntary," notifying the employees that Howard was filling the second-shift custodian position. Howard noted the CBA provides, " 'If the Board has reason to discipline an employee, it shall normally be done outside the presence of other employees, students, or the public except for the employee's Union representative.' "

¶ 11　　　On May 8, 2023, Howard filed a grievance, requesting he be reinstated to the head custodian position. In June 2023, the grievance was denied and was not referred to arbitration. In July 2023, Howard resigned from his position, and the Union informed him it would no longer represent him or pursue the grievance. Howard claimed he resigned due to intolerable working conditions.

¶ 12　　　　　　　B. The Board's Investigation

¶ 13　　　In November 2023, the executive director sent Howard's counsel a letter, instructing her to "submit all documents and other evidence relevant to your claim by e-mail to the investigator at the address listed above and to the Board's general e-mail address (elrb.mail@illinois.gov)" and that, except for affidavits, "all material submitted must also be served upon the [District]."

- 3 -

¶ 14    On November 22, 2023, Howard submitted documents in support of his charge, and on November 27, 2023, he submitted supplemental documents in support of his charge. He indicated the documents, with the exception of his affidavit, were sent to the Board's general e-mail and the District's attorneys. The documents consisted of Howard's affidavit, the two CBAs covering custodial employees, and other supporting documents.

¶ 15    Howard's affidavit generally reiterated the allegations in his charge. Howard's other supporting documents included (1) a May 2023 written warning stating he used a dirty floor mop on cafeteria tables and recommending his demotion, (2) a May 2023 e-mail with the subject line "Involuntary" informing certain District employees of Howard's transfer to second-shift custodian, (3) Howard's grievance and related documents, (4) Howard's e-mails to District officials arguing his demotion violated the CBA and was discriminatory, (5) documents regarding Howard's work history prior to the demotion, including his transfer to the SRO position in July 2022, (6) reference letters, (7) documents related to Howard's requests for leave of absence after the demotion, and (8) Howard's July 2023 resignation letter, which asserted his demotion violated the CBA and was discriminatory. The submission included a certificate of service stating the documents were filed with the Board via its general e-mail and were served via e-mail on the District's attorneys.

¶ 16                    C. The District's Response

¶ 17    In January 2024, the District responded to Howard's charge, arguing he failed to state a *prima facie* claim of an unfair labor practice under section 14(a)(1) of the Act. Specifically, the District alleged Howard failed to show (1) he engaged in protected concerted activity, (2) the District was aware of the protected activity, or (3) the District took adverse action because of Howard's protected activity. The District further alleged it properly demoted Howard for using a

dirty floor mop on cafeteria tables. The District filed supporting documents, which largely overlapped with Howard's documents. The new documents the District submitted included a list of positions held by Howard and the job description for the head custodian position.

¶ 18                              D. Howard's Counsel's Correspondence

¶ 19        The following facts are derived from Howard's Rule 329 motion to supplement the record, filed with this court in July 2025, and the exhibits attached thereto.

¶ 20        Between February and May 2024, Howard's counsel exchanged correspondence with a Board investigator, Joseph "Nick" Gutierrez. In a February 2024 e-mail, the Board investigator requested clarification on several factual and legal issues with Howard's charge. The Board investigator explained he understood the charge to allege the District violated the Act by failing to adhere to the terms of the CBA, and the charge did not include an assertion of unlawful retaliation. He asked counsel for "some authority for the proposition that a breach of a [CBA] is[ ] sufficient to raise an issue for hearing under Section 14(a)(1) of the Act."

¶ 21        In a March 2024 letter sent via e-mail to the Board investigator, Howard's counsel provided, in relevant part, the following new facts: (1) in December 2022, Howard complained to a District manager and a Union official regarding "misleading" wording about pay practices in the SRO CBA; (2) in January 2023, Howard was forced to take on the work of other custodians and assigned a heavier workload than other employees; and (3) Howard's demotion was much harsher than discipline imposed on other employees, including one employee who received no discipline after running a lawnmower into a fence. The letter indicated the only recipient of the letter was the Board investigator.

¶ 22        In a May 1, 2024, e-mail, the Board investigator requested additional clarification from Howard's counsel and instructed her to file her response by the close of business on May 20,

2024.

¶ 23 In a May 28, 2024, letter sent via e-mail to the Board investigator, Howard's counsel reiterated her recitation of the facts and added that in March and April 2023, Howard met with District managers and a Union official to recommend hiring individuals from the Peoria Adult Transition Center to make up for a custodian shortage, but he was met with irritation and hostility. The letter indicated the only recipient of the letter was the Board investigator.

¶ 24 E. The Executive Director's Recommended Decision and Order

¶ 25 In November 2024, the executive director issued a recommended decision and order dismissing Howard's charge. The executive director noted Howard's original charge asserted the District committed an unfair labor practice by violating the CBA but, during the course of the investigation, Howard's "accompanying narrative" expanded the charge to allege unlawful retaliation for Howard's protected concerted activity. The accompanying narrative included the facts relating to the December 2022 meeting regarding SRO pay practices and the March 2023 meeting regarding custodian hiring practices. The executive director found (1) Howard's claim alleging a violation of the CBA was "deficient on its face" and (2) because there was no evidence Howard's conduct rose to the level of protected concerted activity, his rights under the Act were not implicated.

¶ 26 F. Howard's Exceptions

¶ 27 Also in November 2024, Howard filed exceptions to the executive director's recommended decision, arguing the decision should not be adopted because he made a sufficient showing that the District (1) retaliated against him for engaging in protected concerted activity and (2) violated the terms of the CBA. For his unlawful retaliation claim, Howard asserted he engaged in protected concerted activity when he raised concerns about SRO pay practices in December

2022 and custodian hiring practices in March 2023. He also alleged disparate treatment in that he was subjected to harsher discipline than other employees.

¶ 28       In its December 2024 response, the District argued Howard improperly included new facts and arguments in his exceptions that were not part of the original charge. The District asked the Board to disregard the facts and claims relating to (1) the December 2022 meeting regarding SRO pay practices, (2) the March 2023 meeting regarding custodian hiring practices, and (3) the disparate treatment evidence. The District noted, "While these facts may have been before the Executive Director by virtue of him having been privy to [Howard]'s affidavit or some additional information [Howard] supplied him at some point during the course of the investigation, this is the first time that [the District] is seeing them." The District argued that consideration of the new claims and evidence would prejudice the District because the evidence was not entered into the record and was never served on the District. Finally, the District asserted that Howard did not engage in protected concerted activity.

¶ 29                    G. The Board's Opinion and Order

¶ 30       In February 2025, the Board issued its opinion and order affirming the dismissal, in which it adopted the facts set forth by the executive director in his recommended decision and order. The Board agreed the meeting about custodian hiring practices was not protected concerted activity but overturned the executive director's finding that the meeting regarding SRO pay practices was not protected activity because it "involved the [CBA]." However, the Board ultimately determined Howard failed to show a causal connection between his protected concerted activity and the District's adverse action. The Board noted it disregarded the disparate treatment evidence because Howard raised that evidence for the first time in his exceptions. Regarding Howard's claim alleging a violation of the CBA, the Board found the claim lacked merit, stating,

"It is well established that mere contract violations do not constitute unfair labor practices." One board member dissented, finding Howard's demotion was "causally connected to his concerted activity." The dissent agreed that the majority properly disregarded the disparate treatment evidence.

¶ 31                    H. Howard's Appeal and Motion To Supplement

¶ 32        Howard filed a notice of appeal in this court seeking review of the Board's order. In July 2025, after filing his opening brief, Howard filed a Rule 329 motion to supplement the record with his counsel's communications with the Board investigator. Howard's counsel e-mailed the motion to supplement the record to respondents' counsel, attaching the letters and e-mails discussed above as exhibits (*supra* ¶ 21). None of the exhibits included a certificate of service stating they were served on the responding party

¶ 33        Respondents objected on the basis that the documents were not part of the record before the Board, not filed with the Board, and not served on the responding party. This court took that motion with the case.

¶ 34                              II. ANALYSIS

¶ 35        Howard appeals, asking this court to (1) grant his Illinois Supreme Court Rule 329 (eff. July 1, 2017) motion to supplement the record, (2) vacate the Board's dismissal, and (3) remand with directions to issue a complaint and proceed to an evidentiary hearing on the merits.

¶ 36        We disagree and affirm.

¶ 37             A. Howard's Rule 329 Motion To Supplement the Record

¶ 38        We first address Howard's motion to supplement the record, which was ordered taken with the case.

¶ 39        Howard seeks to supplement the record with two letters and two e-mails exchanged

between his counsel and a Board investigator. Respondents argue the motion should be denied because the correspondence was not filed or served, as required by Board regulations.

¶ 40        Rule 329 provides that a party may supplement the record on appeal to include omissions, correct errors, and settle controversies as to whether the record accurately reflects what occurred in the trial court. *Id.* However, Rule 329 allows supplementation only with documents that were actually before the court. See *Smith v. First National Bank of Danville*, 254 Ill. App. 3d 251, 258 (1993) ("As a general rule, material which was not part of the court record or considered by the trial court is not part of the record on appeal and should not be considered by the appellate court.").

¶ 41        Howard directly appealed to this court from the Board's decision dismissing his unfair labor practice charge. See 115 ILCS 5/16(a) (West 2024) (providing judicial review of a final order of the Board "shall be taken directly to the Appellate Court of a judicial district in which the Board maintains an office"). "The entire record before the administrative agency shall be the record on review." Ill. S. Ct. R. 335(d) (eff. July 1, 2017). "No new or additional evidence in support of or in opposition to any finding, order, determination[,] or decision of the administrative agency shall be heard by the [reviewing] court." 735 ILCS 5/3-110 (West 2024).

¶ 42        "Generally speaking, administrative agencies must enforce as written the rules which they promulgate and may not make *ad hoc* exceptions to or departures from their rules when adjudicating." *Mattoon Community Unit School District No. 2 v. Illinois Educational Labor Relations Board*, 193 Ill. App. 3d 875, 881 (1990). Under the regulations promulgated by the Board, "[a]ll documents relating to any proceeding before the [Board] shall be filed in either the Board's Springfield or Chicago office or shall be sent to the Board's electronic mailbox (ELRB.mail@illinois.gov)." 80 Ill. Admin. Code § 1100.20(a) (2021). In addition, the documents

must be served on the responding party. *Id.* § 1100.20(d). Any documents filed with the Board must include a certificate of service, consisting of "a written statement, signed by the party effecting service, detailing the name of the party served and the date and manner of service." *Id.* § 1100.20(e). "Failure of a party to serve a document *** may be grounds to strike the document, if the failure results in prejudice to another party (such as lack of notice or detrimental reliance) or demonstrates disregard of the Board's processes (such as continued noncompliance)." *Id.* § 1100.20(f).

¶ 43　　　　In the present case, the documents submitted by Howard to supplement the record are not accompanied by a certificate of service indicating they were served on the District. Each document sent by Howard's counsel indicated the only recipient was the Board investigator. The general Board e-mail address was not included on any of the correspondence, nor is there any indication the documents were filed at one of the Board's offices. It appears the first time any of the documents were sent to respondents was in a July 3, 2025, e-mail, in which Howard notified respondents of the motion to supplement the record on appeal.

¶ 44　　　　Moreover, Howard does not dispute that he never served the documents on the District or filed them with the Board. He all but admits he sent the correspondence only to the Board investigator. Because Howard did not follow the proper procedures for filing and serving the documents, the District did not become aware of Howard's allegations of unlawful retaliation relating to SRO pay practices and custodian hiring practices until the executive director issued his recommended decision and order, well after the period for submitting evidence had ended. Accordingly, we conclude the documents were not properly before the Board and were not made a part of the administrative record.

¶ 45　　　　We next determine the extent to which the Board based its decision on matters that

- 10 -

were not part of the administrative record. "The findings and conclusions of the administrative agency on questions of fact shall be held to be [*prima facie*] true and correct." 735 ILCS 5/3-110 (West 2024). However, "an administrative agency cannot base its decision upon facts, data, or testimony which does not appear in the record; findings must be based on evidence introduced in the case, and nothing can be treated as evidence which is not introduced as such." *Gregory v. Bernardi*, 125 Ill. App. 3d 376, 378 (1984).

¶ 46       We conclude the first time Howard raised his allegations of unlawful retaliation in the administrative record was in his exceptions. In its February 2025 decision, the Board found Howard raised his arguments regarding SRO pay practices and custodian hiring practices prior to filing his exceptions because the executive director addressed those arguments in his recommended decision and order. Despite this finding by the Board, the facts and claims relating to SRO pay practices and custodian hiring practices do not appear anywhere in the record prior to the executive director's decision. Notably, both Howard's charge and the District's response address only one claim relating to the District—namely, that the District committed an unfair labor practice when it allegedly violated the CBA. Because the allegations regarding unlawful retaliation are asserted only in Howard's counsel's correspondence with the Board investigator, it is apparent the executive director and, by extension, the Board considered evidentiary material not properly part of the record. "The [Board] will not consider facts raised for the first time in front of the Board." *North Shore Education Ass'n v. North Shore School District 112*, 39 PERI ¶ 60 (IELRB 2022). Moreover, "[i]ssues raised for the first time in exceptions found to be prejudicial to the opposing party should not be considered." *Id.* Accordingly, because Howard did not raise the facts relating to unlawful retaliation until his exceptions, the Board erred in considering those portions of Howard's exceptions.

¶ 47        As a result, we deny Howard's Rule 329 motion and confine our review to the allegations in the charge and the documents submitted in support that were properly made part of the administrative record. We disregard the portions of Howard's brief that rely on the exhibits attached to his motion to supplement the record. We also disregard the portions of the Board's decision to the extent it addresses claims or relies on facts outside the record. See *id.* ("The [Board] will not consider facts raised for the first time in front of the Board.").

¶ 48        Last, we note that when Howard filed his brief with this court, he also filed an appendix that includes the two letters Howard's counsel sent to the Board investigator. Howard makes numerous citations to this appendix in his brief. "[A]ttachments to briefs which are not otherwise of record are not properly before a reviewing court and cannot be used to supplement the record." *Denny v. Haas*, 197 Ill. App. 3d 427, 430 (1990). Because we deny Howard's Rule 329 motion and the letters do not appear elsewhere in the record, we disregard those portions of Howard's brief that cite to the appendix.

¶ 49                        B. The Standard of Review

¶ 50        "The Act provides that a final order of the Board is subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)), taken directly to the appellate court." *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14 (citing 115 ILCS 5/16(a) (West 2010)). "Under the Administrative Review Law, the scope of judicial review extends to all questions of law and fact presented by the record before the court." *Id.* (citing 735 ILCS 5/3-110 (West 2010)).

¶ 51        When the Board determines there is insufficient evidence to issue a complaint and dismisses an unfair labor practice charge, the reviewing court determines whether the Board abused its discretion. See *Macomb Education Ass'n v. Illinois Educational Labor Relations Board*,

265 Ill. App. 3d 194, 202 (1994) ("The decision of whether to issue the complaint *** was within the discretion of the Board."); *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612, ¶ 45 (applying the abuse-of-discretion standard when reviewing the Board's decision to dismiss an unfair labor charge for insufficient evidence). The Board abuses its discretion when its decision is "clearly illogical" or when it is "arbitrary and reached without employing conscientious judgment." *Michels*, 2012 IL App (4th) 110612, ¶ 45.

¶ 52                                C. The Board's Decision

¶ 53        Howard contends the Board erred by dismissing his charge because he made a *prima facie* showing that the District engaged in an unfair labor practice, in violation of section 14(a)(1) of the Act (115 ILCS 5/14(a)(1) (West 2022)). He further contends the Board abused its discretion when it declined to consider the disparate treatment evidence on the ground it was newly raised because he presented this evidence to the Board investigator.

¶ 54                                1. *The Applicable Law*

¶ 55        Section 14(a)(1) of the Act prohibits educational employers from "[i]nterfering, restraining[,] or coercing employees in the exercise of the rights guaranteed under this Act." *Id.* To establish a *prima facie* violation of section 14(a)(1), a petitioner must show (1) he was engaged in protected concerted activity, (2) the employer was aware of that activity, and (3) the employer took adverse action against the employee for engaging in that activity. *Thornton Fractional High School District No. 215 v. Illinois Educational Labor Relations Board*, 404 Ill. App. 3d 757, 766 (2010); *Neponset Community Unit School District No. 307*, 13 PERI ¶ 1089 (IELRB 1997). "[E]mployees engage in concerted activity where they invoke a right grounded upon a [CBA] or the activity is engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." (Internal quotation marks omitted.) *Board of Education of*

- 13 -

*Schaumburg Community Consolidated School District 54 v. Illinois Educational Labor Relations Board*, 247 Ill. App. 3d 439, 456 (1993). As the reviewing court, we "give some deference to the precedent of the previous decisions of the Board unless they are definitely wrong." *Macomb Education Ass'n*, 265 Ill. App. 3d at 201.

¶ 56 In his charge, Howard alleged the District committed an unfair labor practice by violating the terms of the CBA when it (1) demoted him, (2) informed other employees of his demotion, and (3) deviated from its progressive discipline structure. However, the Board has repeatedly held, as it did in this case, that "mere contract violations do not constitute unfair labor practices." *Sorescu v. Chicago Board of Education*, 34 PERI ¶ 150 (IELRB 2018); *Breckenridge v. Chicago Board of Education*, 26 PERI ¶ 4 (IELRB 2010). Moreover, the Board generally lacks jurisdiction to enforce negotiated agreements, such as CBAs or grievance settlements. See *Department of Central Management Services v. Illinois Labor Relations Board*, 2018 IL App (4th) 160827, ¶ 49 (addressing similar unfair labor practice provisions under the Illinois Public Labor Relations Act (5 ILCS 315/10(a) (West 2018))). And an alleged CBA violation does not become an unfair labor practice unless it is "substantial enough to indicate a repudiation or renunciation of the collective bargaining agreement or bargaining obligation." (Internal quotation marks omitted.) *Id.*; see 115 ILCS 5/14(a)(5) (West 2022) (providing that "[r]efusing to bargain collectively in good faith" is an unfair labor practice, mirroring section 10(a)(4) of the Illinois Public Labor Relations Act (5 ILCS 315/10(a)(4) (West 2022))).

¶ 57 Howard makes no such claim here. Indeed, the Act requires CBAs to include a provision that subjects disputes involving the "administration or interpretation" of the contracts to binding arbitration. 115 ILCS 5/10(c) (West 2022). The CBA in this case included such a provision, and the record shows Howard availed himself of this procedure after filing the charge

and prior to resigning from his position.

¶ 58                                    2. *This Case*

¶ 59            We conclude Howard has not established that the Board abused its discretion when it dismissed his charge without directing the executive director to issue a complaint. The record shows that the District disciplined and demoted Howard because he failed to adequately perform his job duties, not because he engaged in any protected concerted activity. The record shows another employee reported to District officials that Howard used a dirty floor mop to clean cafeteria tables. The District officials reviewed video showing Howard using a dirty floor mop on the cafeteria tables on May 1 and May 2, 2023. On May 4, 2023, the District issued a written warning to Howard, placed it in his personnel file, and demoted him to second-shift custodian. On May 5, 2023, an e-mail with the subject line "Involuntary" was sent to other District employees who would supervise Howard in the second-shift custodian position. Thereafter, Howard filed a grievance, in which he acknowledged that "[t]he use of a mop on the table being against best practice is not in question." Based on this record, we conclude that the Board's dismissal of Howard's charge for insufficient evidence was not clearly illogical or arbitrary or reached without employing conscientious judgment. Accordingly, we conclude that the Board did not abuse its discretion by dismissing Howard's charge alleging the District violated section 14(a)(1) of the Act.

¶ 60            In reaching this conclusion, we note that the Board properly disregarded the disparate treatment evidence. Howard argues he submitted the evidence to the Board investigator prior to the filing of his exceptions. However, as discussed above (*supra* ¶ 43-44), Howard's counsel's correspondence with the Board investigator was not properly made part of the administrative record. As such, Howard raised those facts for the first time in his exceptions. See *North Shore Education Ass'n*, 39 PERI ¶ 60 (IELRB 2022) (holding the Board will not consider

facts raised for the first time in exceptions and will not consider issues raised for the first time in exceptions if they are prejudicial to the responding party). Accordingly, the Board did not abuse its discretion in declining to consider the disparate treatment evidence.

¶ 61                                    D. Dismissal of Individual Respondents

¶ 62            Finally, we address respondents' request to dismiss Blackwell, the Board's executive director, and Gutierrez, the Board investigator and staff attorney, as respondents in this administrative review action. In his reply brief, Howard indicates he does not oppose dismissal. "[I]n any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceeding before the administrative agency shall be made defendants." 735 ILCS 5/3-107(a) (West 2022). Blackwell and Guitierrez are neither an administrative agency nor a party of record. Accordingly, we dismiss Blackwell and Guitierrez as respondents.

¶ 63                                    III. CONCLUSION

¶ 64            For the reasons stated, we affirm the Board's decision.

¶ 65            Affirmed.